Kathy McCOY, Appellee

v.

Gary Lee McCOY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 6, 2005.

Filed Dec. 13, 2005.

Theresa B. Male, Harrisburg, for appellant.

Patricia J. Romano, Harrisburg, for appellee.

Before: KLEIN, BENDER and BOWES, JJ.

BENDER, J.

¶ 1 Gary Lee McCoy (Husband) appeals from the order entered January 31, 2005, providing for the equitable distribution of the marital property of Husband and Kathy McCoy (Wife) and awarding counsel fees to Wife. Husband claims that the trial court erred in awarding the sum of $5,000 to Wife toward the payment of her counsel fees and in affirming the master's determination as to the separation date of the parties. We affirm.

¶ 2 Initially, we note that Husband and Wife were married on January 4, 1986. The marriage, the first for both parties, produced three children who were born in 1986, 1988 and 1992. One child lives with Mother, one with Father, and the parties share custody of the third child on an alternating weekly basis. Husband earns approximately $63,000 as a teacher, and Wife earns about $15,000 as a psychiatric aide.

¶ 3 The trial court set forth the history of this case as follows:

On November 20, 2002, [Wife] filed a complaint in divorce against [Husband]. [Husband] then filed a petition on June 30, 2003, raising claims for equitable distribution, counsel fees, costs and expenses, and a special relief application for exclusive use and possession of the marital residence. On October 31, 2003, [Husband] filed a motion for appointment of a divorce master, which this court granted in an order of November 4, 2003. On November 14, 2003, [Wife] filed an amended complaint, including claims for equitable distribution, alimony, alimony pendente lite, and counsel fees and costs.

On January 27, 2004, [Husband] filed an amended special relief application requesting that the court award [Husband] the marital residence as an advance on equitable distribution. Following evidentiary hearings on February 23 and 27, 2004, this court entered an order awarding the marital residence to [Husband], and directing [Husband] to pay [Wife] $50,000 in cash and to transfer to [Wife] $25,000 from certain retirement accounts in [Husband's] name. The master's hearing was held on March 2, 3 and 8, 2004, before Hearing Master George Porter. On March 19, 2004, the master issued his report and recommen-

dation, to which both parties filed exceptions. The court denied the exceptions, except for one raised by [Husband] regarding the value of a car awarded to [Wife]. On January 31, 2005, this court adopted the master's recommendations, with the exception of the value of the car, and entered a divorce decree and distribution order.

Trial Court Opinion (T.C.O.), 4/26/05, at 1–2.

¶ 4 In light of the fact that the court adopted the master's recommendations, we note that the master found that the total marital assets equaled $409,646 and, after considering the relevant factors to be applied to the division of marital property and deducting for marital debt, he essentially recommended a 50–50 split of the assets. The master also recommended that Wife receive $500 per month in alimony payments for a 15–month period and that Husband should pay $5,000 toward Wife's attorney's fees.

¶ 5 From the January 31, 2005 decree and distribution order, Husband filed the instant appeal, raising two issues for our review:

Did the trial court abuse its discretion by directing Husband to pay $5,000 of Wife's counsel fees?

Did the trial court abuse its discretion by finding that the parties separated on the day Wife filed her divorce complaint when the evidence established that the parties had separated nearly six years prior to that date?

Husband's brief at 7.

¶ 6 Our role in reviewing equitable distribution awards is well-settled.

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Harasym v. Harasym*, 418 Pa.Super. 486, 614 A.2d 742, 746 (1992). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Zollars v. Zollars*, 397 Pa.Super. 204, 579 A.2d 1328, 1330 (1990), *appeal denied*, 527 Pa. 603, 589 A.2d 693 (1991). *Mercatell v. Mercatell*, 854 A.2d 609, 612 (Pa.Super.2004).

¶ 7 Husband's first argument centers on the award of counsel fees in the amount of $5,000 to Wife. He contends that "the master provided no analysis of the facts, and no discussion of the applicable caselaw" and that the trial court "did not articulate a basis for its agreement with the master." Husband's brief at 14. With regard to this issue, the trial court stated:

In the instant case, [Husband] has an annual income of approximately $63,000.00. [Wife] earns approximately $15,000.00 per year. There is a great disparity between [Wife's] and [Husband's] income[s], therefore, in order to maintain or defend against an action for divorce, [Wife], who was financially dependent on [Husband] for support, clearly needs financial assistance.

[Husband] argues that [Wife] has $50,000.00 in cash that [Wife] received in advance of equitable distribution of the marital assets pursuant to an order of this court, dated February 27, 2004, that [Wife] should use to pay counsel fees.

[Wife] received the $50,000.00 in advance of equitable distribution of the marital assets, when [Husband] received exclusive possession of the marital residence. Therefore, [Wife] must use the $50,000.00 to purchase a place for her and her children to live, and this court properly awarded [Wife] counsel fees.

T.C.O. at 3–4 (citations omitted).

¶ 8 To support his contentions that the trial court abused its discretion, Husband

quotes this Court's opinion in *Teodorski v. Teodorski*, 857 A.2d 194 (Pa.Super.2004), wherein we stated that:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> \*   \*   \*   \*   \*   \*
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Id.* at 201 (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 785–86 (Pa.Super.2003)).

¶ 9 First, Husband asserts that Wife's documentation and testimony concerning the amount of counsel fees fails to "describe the activity, the amount of time spent on the particular activity, or any basis on which to assess the reasonableness of the claimed fees. There simply is no identification of the services performed." Husband's brief at 17. Husband relies on *Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382 (1996), and *Anzalone*, cases in which this Court affirmed the denial of requests for counsel fees because of a failure to document both the amount of fees and the services performed for those fees.

¶ 10 Second, Husband contends that Wife's award in the equitable distribution of the marital property militates against an award of attorney's fees, particularly because Wife did not demonstrate actual need. Although Husband acknowledged that the marital estate had no liquid assets available for distribution, he argues that Wife received the $50,000 in exchange for Husband's receipt of the marital residence and, therefore, she could have used part of that sum to pay her counsel fees.

¶ 11 Relying on *Fitzpatrick v. Fitzpatrick*, 377 Pa.Super. 268, 547 A.2d 362 (1988), and *Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409 (1985), Husband also argues that Wife's financial resources were not considered. These two cases stand for the proposition that the "receipt of a large amount of cash [in connection with equitable distribution] vitiates what would otherwise constitute need...." *Fitzpatrick*, 547 A.2d at 369. Therefore, Husband contends that since Wife received $50,000 in cash, some of that sum could pay counsel fees without her incurring any debt. *Cf. Plitka v. Plitka*, 714 A.2d 1067 (Pa.Super.1998) (affirming the award of counsel fees because dependent spouse was not in a position to pay these fees without incurring additional debt). As part of this argument, Husband also points out that Wife has chosen to work part-time at Hershey Medical Center as an aide, rather than work as a substitute teacher, a job that would bring in a larger income. Concomitantly, Husband argues that his inability to pay was not considered in that he incurred credit card debt to pay his attorney, he assumed all liabilities in connection with the marital home, including the borrowing of the $50,000 to make that payment to Wife, and he must pay alimony to Wife for 15 months.

¶ 12 We disagree with Husband's position with regard to his reliance on *Litmans* and *Anzalone*. Both cases are distinguishable in that neither record in those cases contained any documentation as to the amount of fees, while here Wife's documentation contains a running tally of her attorney's charges for services rendered.

However, as noted by Husband, the record does not contain any notation as to whether the charges were for phone calls, reviewing documents or preparing for a hearing, etc., a practice that we do not condone. However, recognizing that there are no assertions by either party that the other party undertook practices that prolonged the litigation in this matter, as appeared to be the situation in *Fitzpatrick*, we conclude that the numerous hearings held before the trial court evidences knowledge on the part of the court as to the reasonableness of the charges.

■ ¶ 13 In addition to the factors set forth above in *Teodorski*, we recognize that "[c]ounsel fees are awarded only upon a showing of need." *Anzalone*, 835 A.2d at 786 (quoting *Harasym*, 614 A.2d at 747). The question then is whether, upon receipt of the $50,000, Wife's need to maintain or defend the divorce action was negated. Obviously, the trial court concluded that Wife needed the money to house herself and the child(ren) and, because of Husband's greater income, an award of counsel fees was found to be appropriate in this case. Although we recognize that this is a close case, we are bound by our standard of review and may not reverse the grant of counsel fees unless the trial court abused its discretion. "An abuse of discretion entails a misapplication of the law or a manifestly unreasonable judgment in light of the record." *Stackhouse v. Stackhouse*, 862 A.2d 102, 104 (Pa.Super.2004). Under the circumstances here, we cannot conclude that the court's decision was manifestly unreasonable. Accordingly, we are compelled to affirm the trial court's award of attorney's fees to Wife.

■ ¶ 14 Husband's second issue involves the determination by the master and the confirmation by the trial court that the parties' date of separation fell on November 20, 2002, the date that Wife filed

her divorce complaint rather than on December 31, 1996, as argued by Husband. Husband contends that although the parties continued to live in the same household, as of December 31, 1996, they lived "separate and apart" as that term is defined in section 3103 of the Divorce Code, 23 Pa.C.S. § 3103. The determination of the separation date obviously impacts the value of property in that "[o]nly property acquired 'prior to the date of final separation' is marital property and therefore subject to equitable distribution. 23 Pa.C.S.A. §§ 3501–02." *Teodorski*, 857 A.2d at 197 (footnote omitted).

¶ 15 The trial court responded to Husband's argument regarding the parties' separation date as follows:

[Husband's] next issue asserts that this court abused its discretion in affirming the master's finding that the parties separated on the date that [Wife] filed a divorce complaint, arguing that the evidence established that the parties separated nearly six years prior to that date. The Divorce Code defines "separate and apart" as "cessation of cohabitation, whether living in the same residence or not. In the event a complaint in divorce is filed and served, it shall be presumed that the parties commenced to live separate and apart not later than the date that the complaint was served["]. 23 Pa.C.S. § 3103. "There must be an independent intent on the part of one of the parties to dissolve the marital union" and "the intent must be clearly manifested and communicated to the other spouse." *Sinha v. Sinha*, 515 Pa. 14, 526 A.2d 765[, 767] (1987).

In the instant case, the parties lived together through November 2002, when [Wife] filed a divorce complaint. To outsiders, [Wife] and [Husband] appeared to be a happily married couple, frequently taking their children on vaca-

tions, to parks, games, church, banquets and family reunions. [Wife] and [Husband] also shared finances and filed a joint tax return. There is also no evidence to indicate that either party was unfaithful prior to October 2002, and in fact [Husband] conveyed during the master's hearing that he would not have dissolved the marriage despite its poor quality. As evidenced by the foregoing facts, there was no clearly manifested or communicated intent to dissolve the marriage on the part of either party until November 2002, when the divorce complaint was filed. Therefore, this court properly affirmed the master's finding that the date of separation was on November 20, 2002.

T.C.O. at 4–5 (citations to the master's report omitted).[1]

¶ 16 Husband contends that the testimony from various witnesses and Wife's e-mails support his position that Wife had separated from him, both physically and emotionally, for more than a six year period. Husband also argues that the trial court's reliance on *Sinha* is inapposite in that *Sinha* dealt with a unilateral divorce that required a three year period of living separate and apart under 23 Pa.C.S. § 102(a)(2). Despite the differences between *Sinha* and the instant case, the Supreme Court's discussion as to intent encompassed in the "separate and apart" language is instructive. The *Sinha* court stated that "[t]here must be an independent intent on the part of one of the parties to dissolve the marital union.... This intent must be clearly manifested and communicated to the other spouse." *Id.* at 767.

¶ 17 We are also aware that the definition of "separate and apart" found at 23 Pa.C.S. § 3103 was amended on November

---

1. The master explained his reasons for recommending that separation occurred on the date the complaint was filed as follows:

    In support of his argument that separation occurred in 1996, Husband pointed out that the parties have slept in separate rooms for several years, have not been romantic and, around 1996, the parties did discuss a divorce. Additionally, for the past several years, the parties have not done things as a couple, but only as a family.

    On the other hand, the parties lived together through November 2002. As far as appearances were concerned, the parties were a happily married couple. When it was announced that a divorce was imminent in November 2002, friends and acquaintances ... were surprised. Despite not going out as a couple, the family went out as a group on frequent occasions to places such as Hershey Park, Whittaker Center, baseball games, church, church events, baseball banquets, basketball banquets and each other's family reunions. They took a vacation in 1997 to Florida. Despite their lack of intimacy, the couple appears to have kept their problems to themselves and represented themselves to the world as an ordinary married couple.

    Additionally, they cooperated as an economic unit. Husband worked hard and brought home a paycheck. Wife worked various part-time jobs and managed the parties' finances through control of the checkbook. They filed joint tax returns.

    The master understands that neither party was particularly happy in the marriage. However, Husband was at least resigned, to the marriage for the sake of the children. During the course of the hearing, the master learned that Husband would not have dissolved this marriage despite its poor quality.

    The watershed event did occur in fall 2002. In October 2002, Wife was introduced to a man at a party. A romantic affair followed thereafter. Husband found a letter that Wife had written regarding the affair. Soon after learning that Husband found the letter, Wife consulted her attorney and filed for divorce on November 20, 2002.

    There is no indication that either party was unfaithful prior to October 2002.

    Master's Report, 3/19/04, at 13–15.

29, 2004, and became effective January 28, 2005. Prior to the 2004 amendment, the term "separate and apart" was defined as: "[c]omplete cessation of any and all cohabitation, whether living in the same residence or not." Notably, "[s]ection 5(1) of Act 2004–175 provides that "the amendment of the definition of 'separate and apart' ... shall apply to complaints served before, on or after the effective date of this paragraph." 23 Pa.C.S. § 3103 Historical and Statutory Notes. Therefore, the fact that the complaint in the instant case was served prior to the amendment is of no moment; the amendment applies. The amended definition reads as follows:

> Cessation of cohabitation, whether living in the same residence or not. In the event a complaint in divorce is filed and served, it shall be presumed that the parties commenced to live separate and apart not later than the date that the complaint was served.

23 Pa.C.S. § 3103 (as amended in 2004 with effective date as of January 28, 2005).

¶ 18 The new version of the definition contains specific language pertaining to a presumption that the date of separation, *i.e.*, the date on which the parties begin living separate and apart, is established upon the filing and serving of a divorce complaint, unless an earlier date can be substantiated through the presentation of evidence confirming an earlier date. "A presumption ... is a procedural device which not only permits an inference of the 'presumed' fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in [a decision] ... in favor of the party invoking the presumption." *Commonwealth v. Slaybaugh*, 468

Pa. 618, 364 A.2d 687, 689 (1976). In short, "[t]he party attempting to rebut the presumption has the burden of proof." *CW v. LV*, 788 A.2d 1002 (Pa.Super.2001).

¶ 19 Here, Husband, as the party with the burden of proof because he opposes the presumed fact, needed to prove that either he or Wife had the "independent intent ... to dissolve the marital union" and that the intent was "clearly manifested and communicated to the other spouse." *Sinha*, 526 A.2d at 767. Although both the master and the trial court found that the marriage had not been a particularly good one, neither found evidence that would support a finding that an intent to dissolve the marriage had been communicated by one spouse to the other prior to the filing of the divorce complaint by Wife. Following our review of the record, we must agree. Accordingly, we conclude that Husband has failed to carry this burden of proof that the parties' separation occurred prior to the date Wife filed and served the divorce complaint. Husband has not rebutted the presumption.[2]

¶ 20 Order affirmed.

---

**2.** Wife has requested an award of counsel fees to cover her expenses in connection with this appeal as allowed under Pa.R.A.P. 2744. She bases her request on an allegation that Husband's appeal is frivolous. We disagree and deny Wife's claim in this regard.