### Dolinar v. Kapton

C.P. of Allegheny County, no. FD 99-4549-003.

*Charles P. Voelker,* for plaintiff.
*Harry Kapton,* pro se

WECHT, *J.,* March 10, 2006—Defendant Harry Kapton (Husband) appeals from this court's equitable distribution order dated September 13, 2005. In addition to distributing the marital assets between the parties, the order directed Husband to pay $50,000 in counsel fees and found Husband in civil contempt for his failure to pay $3,700 in counsel fees that already had been awarded.

## BACKGROUND

The parties married on November 29, 1980. They separated on August 1, 1999. A decree in divorce issued on December 19, 2002. Two children were born of the marriage: Matthew, age 22 at the time of trial, and Amanda, age 19 at the time of trial.

At the time of trial, Wife was 50 years of age and in good health. Wife's highest level of education was a high school diploma. (R. at 7-8.) Wife was employed at the beginning of the marriage until 1982, when she became pregnant with Matthew. (R. at 8.) Wife then spent the next 14 years, until 1996, as a full-time mother and homemaker. (R. at 8.) In addition, Wife assisted Husband by acting as an accountant and bookkeeper for rental units owned by the parties. (R. at 8-10.) Wife also participated in running the parties' business, Crown Limousine Service, during the 1990s. (R. at 9.)

In 1996, Wife began working outside the home for Davis Baker, an accounting firm. (R. at 10.) In 1997, Wife commenced employment as a bookkeeper with Greyfox Systems. (R. at 10.) At Greyfox, Wife worked

her way up to a level where she was responsible for maintaining the general ledger, accounts payable, accounts receivable and payroll. (R. at 10.) Wife had been unemployed since July 8, 2005, when her employer, Greyfox, relocated its operations to Harrisburg. (R. at 8, 66.) Wife was not offered a job with the new company. (R. at 8, 66.) Wife had been searching for new employment for six or seven months without success. (R. at 11.) Wife cited her lack of a college degree and age as "roadblocks" in attaining employment. (R. at 11.)

Husband was 61 years old at the time of trial. Husband did not offer any evidence as to the status of his health at trial, other than to state that, "I'm old, I'm fat, I'm bald, I'm drawn." (R. at 158.) On cross-examination, Husband verified that he had admitted at deposition that he had attended Carnegie Tech and was only six credits short of a degree. (R. at 156-57.) Husband admitted that he had been "pretty lucky" in the real estate business. (R. at 157.) During the marriage, the parties maintained several rental properties, both commercial and residential. (R. at 9.) Husband also admitted that the parties' limousine business, Crown Limousine Service, had been successful. (R. at 157.) Husband had a pilot's license and was licensed to fly a number of different aircraft. (R. at 157.) Husband owned an airplane at one point during the parties' marriage. (R. at 158.)

## PROCEDURAL HISTORY

This action has had a long and torturous history since its commencement in 1999. The undersigned received this case after the Honorable Guido A. DeAngelis entered an order on April 4, 2003 providing that the case

would be assigned to this member of the court following Judge DeAngelis' transfer to the Criminal Division.

Following the filing of a praecipe by Wife, this court first conciliated the economic issues in this case on October 26, 2004. Husband appeared alone for that conciliation and stated that Angelo Papa, Esquire was his attorney.[1] Wife and her counsel appeared and provided a marital asset and liability summary based upon information that they had been able to obtain from Husband. By order dated October 27, 2004, this court scheduled a one-day equitable distribution trial for April 18, 2005. Following presentation of a "Motion for continuance" by Wife on March 1, 2005, the trial date was re-scheduled for September 12, 2005 because of Wife's counsel's unavailability on April 18.

Husband appeared pro se at trial on September 12, 2005. Husband did not submit a pretrial statement in accordance with this court's October 27, 2004 pretrial order. At the close of trial, this court invited both parties to submit proposed forms of order to this court by 12 p.m. on September 13. Both parties submitted proposed orders on the morning of September 13. Following consideration of the proposed orders, as well as the particular facts of this case and the applicable law, this court issued its equitable distribution order on September 13, 2005.

On October 6, 2005, Husband filed a notice of appeal. Husband attached a certificate of service dated September 26, 2005, stating that he had served the undersigned by mail. However, this court did not receive Husband's

---

1. Upon motion, Attorney Papa was granted leave to withdraw as Husband's attorney by order dated December 8, 2004.

notice of appeal. Rather, this court, on its own initiative, discovered the notice of appeal on October 12, 2005 by looking at the prothonotary's docket. Despite Husband's failure to properly serve this court, this court issued an order on October 12 directing Husband to provide a concise statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b). On October 13, 2005, this court received a copy of Husband's notice of appeal in the mail with a postmark of October 12, 2005 on the envelope. On October 27, 2005, Husband filed his concise statement.

The disposition of Husband's appeal has been significantly delayed by Husband's failure to comply with procedural rules in a timely manner. In particular, Husband failed to file his docketing statement and to order the trial transcript. By order dated November 14, 2005, the Superior Court directed Husband to file his docketing statement by November 24, 2005. Husband complied.

By letter dated November 15, 2005, this court informed the Superior Court Prothonotary that Husband had not ordered the trial transcript, and that this court was accordingly unable to file an opinion. By order dated January 19, 2006, the Superior Court directed Husband to show cause, in the form of a letter, as to why his appeal should not be dismissed for his failure to order and pay for the trial transcript. Husband ultimately paid for the trial transcript, which was filed on March 1, 2006.

## THE INSTANT APPEAL

In his concise statement, filed on October 27, 2005, Husband states the following as his issues for review:

(1) The trial court erred in finding the net value of the 307 Main Street property to be $25,000, since the court failed to consider the liens, charges and expenses incurred in connection with the property, including but not limited to the existing mortgage, unpaid realty taxes, and costs for repair and maintenance. The true equity subject to distribution was less than $1,000.

(2) The trial court erred in finding the net value of the 423 Cubbage Street property to be $57,000, since the court failed to consider the liens, charges and expenses incurred in connection with the property, including but not limited to the existing mortgage, unpaid realty taxes, and costs for repair and maintenance. The true equity subject to distribution was $4,500.

(3) The trial court erred in valuing the vehicles at $50,000 and in basing its finding solely on Wife's speculative, unsubstantiated and unreliable testimony, since the court failed to consider the age and poor condition of the vehicles. The true equity subject to distribution was less than $3,500.

(4) The trial court erred in finding that Husband did not inform tenants at all three properties that all checks were to be made payable to him and Wife, since he did so inform them and since he did not fail to comply with the order.

(5) The trial court erred in finding the fair rental value of Husband's apartment to be $600 per month, since this value was based solely upon unfair and inaccurate speculation by Wife's counsel, since the property had a far lower rental value, and since the property had previously rented for only $200 and $230 per month.

(6) The trial court erred in finding that all of Wife's counsel fees were necessary and reasonable, and were due to Husband's conduct and in failing to adequately consider the fact that Wife retained expensive counsel, and that many actions taken by her counsel were in no way related to Husband's actions. Furthermore, the trial court failed to consider that Husband caused postponement of the sheriff sales on at least four occasions.

(7) The trial court erred in failing to split the Wife's 401(k), since Husband was entitled to one half.

(8) The trial court erred in directing Husband to sign a deed to the rental property at 415-417-419-412 [sic] Cubbage Street and "Burgan Alley" property since Husband no longer has any legal interest in the realty and since he is therefore unable to comply with this court's directive.

(9) The trial court erred in granting Wife's claim for rental income from the rental properties, since all of the values assumed by the court were inaccurate, unfair, speculative and not based on reliable or competent evidence.

(10) The trial court erred in finding Husband in contempt for his failure to pay $3,700 to Attorney Voelker, all without proper notice and due process, since Husband had no ability to pay this amount and did not willfully or intentionally violate the order.

(11) The trial court erred in finding that the proceeds of sale of the marital property at 307 East Main Street was $25,000 and that the proceeds of sale from 423 Cubbage was $57,000, since the true proceeds were con-

siderably less and since the court's finding was inaccurate, incorrect and unfair.

(12) The trial court erred in directing Husband to pay the sum of $50,000 to Wife and her attorney, since amount [sic] was erroneously determined and since Husband has neither the assets nor the present ability to pay such an enormous sum of money.

(13) The trial court erred in entering an equitable distribution award that was unfairly and unreasonably punitive as to Husband, and that failed to either accurately fix the true values of the assets and liabilities of the parties or to equitably distribute the assets.

(14) The trial court erred in uncritically accepting the testimony and evidence of the Wife and in rejecting the testimony and evidence of the Husband on virtually all matters in dispute, and in accepting speculative and unsubstantiated information on which to base its determinations of fair market value.

(15) The trial court erred in finding a fair market value of $75,000 for the Cubbage Street realty and awarding same to Wife. The realty is worth substantially more than that and the court erred in relying upon outdated, inaccurate and unreliable tax assessments records.

(16) The trial court erred in failing to award Husband the many items of personalty to which he is clearly entitled and ignoring such items as household furnishings worth $45,000, silver and china worth $43,000, Husband's personal furniture and pool table, all of which remain in Wife's possession.

(17) The trial court erred in awarding property valued at $383,439 to Wife and -$128,439 for Husband, since

this distribution was unfair, inequitable and against the evidence and applicable law.

(18) The trial court erred in ruling against Husband during the trial on evidentiary and related issues and in overruling and disallowing Husband's attempts to offer proof on the issues.

(19) The Husband reserves the right to supplement this statement to further identify and specify the trial court's errors upon receipt and review of the trial transcript.

## DISCUSSION

### I. *Standard of Review*

In the recent case, *McCoy v. McCoy,* 888 A.2d 906, 908 (Pa. Super. 2005), the Superior Court restated its standard of review in equitable distribution cases as follows:

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." 888 A.2d at 908, quoting *Harasym v. Harasym,* 418 Pa. Super. 486, 494, 614 A.2d 742, 746 (1992).

Further, the *McCoy* court reminded that an abuse of discretion must be shown by clear and convincing evidence. *McCoy, supra* at 908. (citations omitted)

### II. *Valuation and Distribution of Marital Property*

#### A. Fairness of Valuation and Distribution

In his thirteenth and seventeenth issues raised on appeal, Husband takes issue in general with the fairness of

this court's valuation and distribution of the marital assets. This court applied the factors set forth at 23 Pa.C.S. §3502(a) to reach the equitable distribution contained in its September 13, 2005 order. The following section 3502(a) factors played a significant role in this court's determination:

"(1) The length of the marriage.

"(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

"(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

"(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker."

As to the first equitable distribution factor, at 19 years, the parties' marriage was of significant duration. As to the third equitable distribution factor, while Wife is about 11 years younger than Husband, Wife credibly testified that her age and lack of a college degree have limited her employment opportunities. (R. at 11.) Husband, on the other hand, was just six credits short of a degree at Carnegie Tech and had been successful in the real estate and limousine businesses. (R. at 156-57.)

As to the sixth equitable distribution factor, Wife testified that her medical insurance from her most recent employer was about to run out. (R. at 11.) Wife testified that her sole retirement asset was her 401(k) from

Greyfox Systems. (R. at 12, 137.) Wife testified that she had life insurance at the time she was employed by Greyfox, but that she no longer had the coverage. (R. at 12.) Wife testified that Husband had a $50,000 life insurance policy during the marriage. (R. at 12.) Wife did not know whether the policy still existed at the time of trial. (R. at 12.) Husband offered no testimony or evidence on this issue. Further, Husband offered no testimony or evidence as to his medical, retirement, insurance, or other benefits other than to mention the fact that he had been covered under Wife's medical insurance through Greyfox and had subsequently obtained medical coverage through the Veteran's Administration. (R. at 147.)

As to the seventh equitable distribution factor, this court considered Husband's significant dissipation of marital assets, including the real estate and vehicles owned by the parties. This issue will be discussed more fully below in relation to the specific real estate parcels and vehicles.

Because Husband failed to provide any evidence as to the values of marital property, this court relied for the most part upon values provided by Wife. In the recent case of *Jacobs v. Jacobs*, 884 A.2d 301 (Pa. Super. 2005), the court held that it was proper to sanction the husband for his failure to comply with a discovery order by assigning values to the marital assets based upon evidence presented by Wife. *Jacobs*, 884 A.2d at 306. Similarly, in this case, where Husband presented almost no evidence, it was proper for this court to utilize the values provided by Wife.

This court also notes that Husband's assertion (within his seventeenth issue raised on appeal) that this court awarded property worth $383,439 to Wife and -$128,439 to Husband has no basis in the evidence presented at trial. The total marital estate, as shown at the end of paragraph 4 of this court's September 13, 2005 order, was $172,835. Of that amount, Husband received assets worth $132,000, while Wife received only $40,835 after the loans that Wife had incurred were subtracted out. On top of that distribution, Husband already had received the total rental income of $70,560 and was directed to reimburse Wife for one-half, or $35,280. (See September 13, 2005 order, ¶5.)

## B. Valuation and Distribution of Real Estate

In his first, second, fifth, eighth, ninth, eleventh, and fifteenth issues raised on appeal, Husband takes issue with this court's valuation and distribution of real estate owned by the parties during the marriage.

### 1. *Valuation of property at 307 Main Street and 423 Cubbage Street*

In his first, second, and eleventh issues raised on appeal, Husband states that this court erred in its valuation of the 307 Main Street and 423 Cubbage Street properties.

Wife's testimony established the following:

The parties purchased a commercial building at 307 Main Street in Carnegie, PA in 1989 for $40,000. (R. at 13, 15.) The property was occupied over the years by various commercial establishments, such as pizza shops, that paid rent to the parties. (R. at 15.) It was Husband's prac-

tice to put the title to properties that the parties acquired into the name of a corporation. (R. at 15.) Husband titled the property at 307 Main Street in the name of Commercial One Incorporated. (R. at 15; plaintiff's exhibit B.)

By orders dated August 30, 1999 and November 6, 2000, Husband was enjoined from selling, transferring, encumbering or otherwise dissipating the interest and/or value of the parties' real estate, including the property at 307 Main Street titled in the name of Commercial One Incorporated. The November 6, 2000 order, entered by the Honorable Kathleen R. Mulligan, added Commercial One Incorporated as an additional defendant. Commercial One Incorporated was enjoined from selling, transferring, encumbering or otherwise dissipating the interest and/or value of the real estate at 307 Main Street.

By order dated June 19, 2002, entered by Judge DeAngelis, Husband was permitted to sell the property at 307 Main Street, provided he submit an agreement of sale to the court. Wife testified that the sale pending at that time was "for a different buyer, a different time and a different price." (R. at 21.) Ultimately, on August 30, 2004, Husband sold the property to Tasco Properties for $25,000. (R. at 21-22; plaintiff's exhibit D.) Wife did not know what Husband did with the sale proceeds. (R. at 21.) Wife did not indicate, and the docket did not show, that Husband provided an agreement of sale before selling the 307 Main Street to Tasco Properties.

Based upon Wife's testimony and exhibit D showing the sale price of 307 Main Street to be $25,000, this court assessed the 307 Main Street property at $25,000. This asset was distributed to Husband because he presented no evidence that he shared the proceeds with Wife. Hus-

band asserts in his first issue for review that the "true equity" from the sale of this property was less than $1,000. Husband did not attempt to contradict the $25,000 value, nor did he offer evidence that the true equity from the sale of this property was less than $1,000.

As to the property at 423 Cubbage Street, Wife's testimony established the following:

On August 29, 1983, the parties acquired 423 Cubbage Street, a residential building. (R. at 13, 22.) Husband had the property titled under the name of C&B Incorporated. (R. at 22.) On October 22, 2004, Husband sold this property to Jason Eckles for $57,000. (R. at 24; plaintiff's exhibit G.) Husband sold this property in violation of the August 30, 1999 and November 6, 2000 orders enjoining him from selling marital real estate. (R. at 24.)

Based upon Wife's testimony and the documentation she provided, this court valued the 423 Cubbage Street property at $57,000 and awarded it to Husband. Husband did not offer any evidence to contradict this value. In his second issue raised on appeal, Husband asserts that the "true equity" of this property was $4,500. However, Husband did not present any evidence to that effect at trial. Accordingly, this court properly distributed this property to Husband, who had sold the property in violation of court orders and received sale proceeds of $57,000.

## 2. *Valuation and transfer of property at 415-417-419-421 Cubbage Street*

In his fifteenth issue raised on appeal, Husband contends that the undersigned erred in valuing 415-417-419-421 Cubbage Street (415/421 real estate) at $75,000 and

awarding it to Wife. In his eighth issue raised on appeal, Husband states that the undersigned erred in directing Husband to sign a deed transferring the 415/421 real estate to Wife where Husband no longer has any legal interest in the realty.

As to the valuation of the 415/421 real estate, this court accepted Wife's proposal to use the 2004 Allegheny County real estate assessment of $75,000. This court did not find that this assessment was "outdated, inaccurate and unreliable," as Husband claims in his fifteenth issue raised on appeal. At trial, Wife testified that she had been unable to obtain information either from Husband or PNC Bank as to the status of the mortgage on the property. (R. at 33; plaintiff's exhibit O.) Husband offered absolutely no evidence at trial as to the value of this property. Accordingly, this court properly accepted Wife's value. See *Jacobs,* 884 A.2d at 305-306. Further, in light of the fact that Husband already had received sale proceeds for such a large chunk of the marital estate, it was proper to award this asset to Wife.

As to Husband's contention within his eighth issue that he no longer has a legal interest in the 415/421 real estate, the evidence at trial was to the contrary. At the time of trial, Husband was living on the second floor of this building with the parties' son. (R. at 26.) The six-unit property was acquired on October 7, 1981 by Heritage Associates Limited, which was another "corporation" formed by Husband.[2] (R. at 27.) Husband purchased the property from his parents for $1. (R. at 27.)

2. The word corporation is in quotation marks because it was unclear whether Husband formally set up these corporations or merely put the titles in the names of corporations that did not actually exist.

Wife presented evidence demonstrating that Husband had acknowledged ownership of this property in the past. (Plaintiff's exhibits L and M.) Further, Husband had the alley known as Burgan Alley between the 415/421 real estate and 423 Cubbage Street vacated as a public right of way. (R. at 31-32; plaintiff's exhibit N.) Consequently, Husband also owned Burgan Alley, which provides parking space for the tenants of the 415/421 real estate. This court also distributed Burgan Alley to Wife. Husband did not attempt to contradict Wife's testimony at trial, nor did he offer any evidence to show that he had entered into an agreement of sale of the 415/421 real estate and/or Burgan Alley. Accordingly, this court properly concluded that Husband still owned this property and thus could sign a deed transferring the property to Wife.

### 3. *Fair rental value of Husband's apartment*

In his fifth issue raised on appeal, Husband states that the trial court erred in finding the fair rental value of Husband's apartment at the 415/421 real estate to be $600 per month. Husband added that the property had previously rented for only $200 to $230 per month.

At trial, Wife testified that her opinion was that the fair rental value of Husband's apartment was $600 to $700 per month. (R. at 36.) Husband did not object to Wife's offer of an opinion, nor did he attempt to introduce any evidence as to a different fair rental value for this apartment. Therefore, this court properly adopted Wife's fair rental value of $600 per month. See *Jacobs,* 884 A.2d at 306.

## 4. *Wife's claim for rental income*

In his ninth issue on appeal, Husband states that the undersigned erred in granting Wife's claim for rental income "since all of the values assumed by the court were inaccurate, unfair, speculative and not based on reliable or competent evidence." In his fourth issue raised on appeal, Husband states that the trial court erred in finding that Husband did not inform tenants at the parties' rental properties that they were to make all checks payable to both parties.

At trial, Wife testified that, by order dated September 18, 2002, Judge DeAngelis directed Husband to inform the tenants at the 415/421 real estate, 423 Cubbage Street, and 307 Main Street to make all rental checks payable to both parties. (R. at 34.) Husband was further directed to deliver all rental checks to his counsel at the time, Dennis Cline, Esquire. (R. at 34.)

Husband testified that he instructed his tenants to make the checks payable to both parties, but that the tenants did not comply. (R. at 160.) On cross-examination of Husband, the following exchange took place:

"Wife's counsel: So you ignored Judge DeAngelis' order of court?

"Husband: No. They [the tenants] did." (R. at 160.)

Further, Husband asserted that he did not deliver the checks to Dennis Cline because Mr. Cline allegedly stated, "I don't want your checks." (R. at 160.)

Based upon Husband's own admission that (a) the tenants did not make the checks out to both parties, and (b) Husband did not deliver the checks to Dennis Cline, as

well as Wife's testimony that she never saw any of these rental checks, this court concluded that it should grant Wife's request for one-half of the rental income. (R. at 159-60, 34.)

This court based its award of rental income on Wife's testimony. Wife testified as to the rent being charged for each of the four units at issue. (R. at 35.) Wife multiplied the monthly amount due for each unit by the 36 months that had passed since the September 18, 2002 order to reach a rental income in the amount of $48,960 that should have been placed in escrow for both parties. (R. at 35.) Further, Wife added the fair rental value of Husband's apartment at $600 per month for 36 months for a total of $21,600. (R. at 36.) The grand total for rental income was $70,560. Husband did not offer an alternative to the $70,560 figure. Accordingly, this court properly accepted Wife's figure for $70,560 in rental income and awarded her one-half. See *Jacobs,* 884 A.2d at 306.

## C. Valuation and Distribution of Personalty

### 1. *Vehicles*

In his third point raised on appeal, Husband takes issue with this court's valuation of the approximately 24 vehicles that the parties owned for use by their limousine business. At paragraph 4c. of the September 13 order, this court valued the vehicles at $50,000. At paragraph 12, this court awarded the vehicles, which were in existence as of the time of separation, to Husband.

At trial, Wife testified as follows concerning the vehicles owned by the parties:

During the marriage, and at the time of separation, the parties owned a limousine company called Crown Limousine Incorporated. (R. at 46; plaintiff's exhibit Y.) The parties operated the company out of 309 Main Street, which was next door to the property the parties owned at 307 Main Street, and which was owned by Husband's mother. (R. at 46.) Wife described the business as "flourishing" during the 1990s; the parties had up to eight drivers working for them at busier times, such as the prom and wedding season. (R. at 46.) Wife provided a photograph of two Cadillacs and a Lincoln Town Car. (R. at 47-48; plaintiff's exhibit Z.) At separation, the parties had six limousines, a Lincoln Town Car, an antique Austin Rolls Royce, an antique dump truck, and a number of other automobiles. (R. at 48.) The cars were owned either by Crown Limo or K Corp., which was another corporation set up by Husband. (R. at 48.) Wife estimated the value of these vehicles at $50,000. (R. at 49.)

On cross-examination of Wife, Husband challenged Wife as to the make of the "Austin Rolls Royce." (R. at 82-84.) Husband did not offer any direct testimony as to his estimation of value of the cars. At trial, Husband did not offer the "true equity" value of "less than $3,500" that he now suggests in his third issue raised on appeal. On cross-examination, when Wife's counsel asked Husband where the cars were stored after separation, Husband testified that "a couple" were in a garage in Carnegie. (R. at 151.) Husband testified that his sister had sold the building with the equipment in it and that litigation was pending as to her alleged wrongful sale. Husband testified that:

"The rest or a lot of them were out on the farm where we grew up, and they're just in the grass and they rust away. A lot of them were cannibalized, no motor, no transmission, no rear ends, no blocks, some right on the ground." (R. at 151-52.)

In light of Husband's failure to provide any sort of accounting or valuation of these vehicles, this court properly accepted Wife's $50,000 value. See *Jacobs,* 884 A.2d at 306. Further, Husband's testimony as to how these cars were literally put out to pasture after separation demonstrated Husband's dissipation of these marital assets, for which Husband should be charged with the full $50,000 value.

## 2. *Household items*

In his sixteenth issue raised on appeal, Husband states that the court erred in failing to award Husband the "many items of personalty to which he is clearly entitled" and in "ignoring such items as household furnishings worth $45,000, silver and china worth $43,000, Husband's personal furniture and pool table, all of which remain in Wife's possession."

At trial, Husband did not even mention household items, let alone specifics such as silver, china and a pool table. Husband did not submit a pretrial statement, and therefore Husband had not provided an accounting of any such items prior to trial. Husband's first mention of personalty was in an attachment to his proposed order, submitted to this court the day after trial, entitled, "My STUFF from 801 Still in <illegible.>" The "STUFF" list contains a reference to a pool table and a sterling silver

tray. However, it would have been improper for this court to distribute items to either party for which no evidence was submitted at trial. Accordingly, this court did not err when it entered an order awarding no items of personalty to either party.

### D. *Wife's 401(k)*

In his seventh issue raised on appeal, Husband states that the undersigned erred in failing to split Wife's 401(k) "since Husband was entitled to one-half." This court's September 13 order provided that Wife should retain her 401(k), valued at $3,497.

At trial, Wife testified that the value of $3,497 represented the value of her 401(k) as of the date of separation. (R. at 12; plaintiff's exhibit A.) Wife testified that the 401(k) plan represented her only retirement asset. This court determined that Wife should retain her 401(k). In particular, this court considered that, at age 50 and searching for new employment, Wife has a limited opportunity to accumulate additional retirement assets. This court considered that, with his education and business background, Husband could have accumulated (and perhaps still can accumulate) more significant retirement assets than Wife.

Further, in light of Husband's significant dissipation of this marital estate, there was no basis to award Husband any of Wife's sole retirement asset. Since Pennsylvania is not a community-property state, Husband misapprehends the law when he asserts that he was entitled to one-half of Wife's 401(k). Moreover, equitable distribution does not presume an equal division of the marital

estate. See *Platek v. Platek,* 309 Pa. Super. 16, 454 A.2d 1059 (1982).

## II. *Credibility Determinations*

In his fourteenth issue on appeal, Husband states that the court erred in "uncritically accepting the testimony and evidence of the Wife and in rejecting the testimony and evidence of the Husband on virtually all matters in dispute." Husband further states that this court accepted "speculative and unsubstantiated information" in determining valuation.

This court already has noted Husband's failure to produce evidence on virtually all matters in dispute. The burden fell on Wife to produce the evidence. She carried that burden. Husband has not suggested any basis for his appellate claim that Wife's evidence was "speculative and unsubstantiated." Nor can this court discern any such basis. Accordingly, this court can add nothing further on this issue than it already has in the foregoing discussion.

## III. *Rulings on Husband's Evidentiary Objections and Husband's Opportunity To Offer Proof*

In his eighteenth issue raised on appeal, Husband states that the trial court erred in ruling against him during the trial on "evidentiary and related issues and in overruling and disallowing Husband's attempts to offer proof on the issues." This court's rulings on objections made by Husband were proper and this court afforded Husband every opportunity to present his case.

In consideration of Husband's pro se status, this court explained procedures to Husband at several points dur-

ing the trial. (R. at 4-6, 106, 114.) On at least two occasions, Husband objected as to the veracity of the testimony that was being offered by Wife via summary. (R. at 16, 19-20.) In overruling Husband's objections, this court explained to Husband that objections must be based upon a rule of evidence, and that an objection as to the veracity of testimony does not relate to a rule of evidence. (R. at 16.)

Husband objected to the testimony of his sister, Virginia Riegner, who was called by Wife as a witness. (R. at 91-96, 99-101.) Husband maintained his objection after Wife provided an offer of proof stating that Ms. Riegner, who is the guardian of Theresa Kapton (Husband's mother), would testify as to Husband's offers to purchase properties owned by his mother. (R. at 92.) Wife stated that this testimony would tend to prove that Husband is not as destitute as he has portrayed himself to be throughout this divorce litigation. (R. at 92.)

In support of his objection, Husband claimed that the Orphans' Court case relating to his mother is sealed. When this court noted that the fact that a case is sealed would not prevent Wife from calling Ms. Riegner unless there is a gag order issued by another judge, Husband claimed that the Honorable Lee J. Mazur, Orphans' Court Division, had issued a gag order. (R. at 94-95.) Husband stated that he would have brought the gag order to the trial if he had known that Wife was going to call Ms. Riegner as a witness. (R. at 95.) When Wife's counsel noted that Ms. Riegner had been listed on her pretrial statement as a witness, Husband stated that he had not received Wife's pretrial statement. (R. at 95-96.) However, in response to this court's question, Husband ad-

mitted that he lives at the Cubbage Street address where Wife's counsel mailed the pretrial statement. (R. at 96.) This court concluded that Husband received the pretrial statement, and therefore had notice that Ms. Riegner could be called by Wife as a witness. Accordingly, this court overruled Husband's objection. (R. at 96.)

As to Husband's opportunity to offer proof, Husband was afforded ample opportunity to present his case. Husband failed to file a pretrial statement. This court could have sanctioned Husband for this failure pursuant to paragraph 4 of the October 27, 2004 pretrial order. Instead of precluding Husband from offering evidence, this court invited Husband to testify and call witnesses after Wife rested her case. (R. at 141.) At that time, Husband stated, "I didn't know I could." (R. at 141.) This court's October 27, 2004 pretrial statement clearly provided Husband with notice that he was required to file a pretrial statement containing, inter alia, the names of each person Husband intended to call at trial as a witness. Accordingly, this court did not preclude Husband from putting on his case. In fact, Husband offered direct and redirect testimony. (R. at 141-50, 165-66.) In addition, Husband was given the opportunity to offer a closing argument. (R. at 168-70.)

### IV. *Award of Counsel Fees and Enforcement of Prior Award*

#### A. Reasonableness of Wife's Counsel Fees and Award of $50,000 in Counsel Fees

In his sixth issue raised on appeal, Husband states that this court erred in finding that all of Wife's counsel fees

were necessary and reasonable and due to Husband's conduct. Husband further states that this court failed to consider that Husband caused postponement of the sheriff sales on at least four occasions. As to the latter issue, there was absolutely no trial evidence presented by Husband that he had postponed sheriff sales on any occasion.

In determining whether an award of counsel fees is appropriate in equitable distribution, the trial court may consider factors such as the payor's ability to pay, the payee's financial resources, the reasonableness of the counsel fees incurred, and the conduct of a party in protracting the litigation which would increase the requesting party's counsel fees. See *Nuttall v. Nuttall*, 386 Pa. Super. 148, 162-63, 562 A.2d 841, 848 (1989).

At trial, Wife submitted invoices showing a total of $68,829 in counsel fees incurred, a total of $21,000 already paid by Wife, and an outstanding balance of $48,000. (R. at 54-55; exhibits DD and EE.) These fees did not include Wife's counsel's work in preparing for trial. (R. at 56.) Wife's counsel anticipated that Wife would be billed about $5,000 in additional counsel fees for a total outstanding balance of about $54,000. (R. at 56.)

Husband did not object to the admission of Wife's counsel fees. Husband did not attempt to challenge their reasonableness nor assert that the fees were "erroneously determined" as he now states in his twelfth issue raised on appeal. Wife provided ample evidence on the record to demonstrate how Husband's conduct in protracting this litigation for over six years led Wife to incur such

substantial counsel fees. (R. at 54-65.) Accordingly, this court concluded that an award of counsel fees to Wife in the amount of $50,000 was reasonable.

## B. Enforcement of Prior Award of Counsel Fees

In his tenth issue raised on appeal, Husband avers that the trial court erred in finding Husband in contempt for his failure to pay $3,700 in counsel fees.

Wife testified that, on five different occasions, Husband was ordered to pay counsel fees based upon his failure to supply documents or upon findings of contempt. (R. at 64.) Wife testified that these orders were entered on May 23, 2002, September 13, 2002, September 18, 2002 and October 27, 2004. The total of these counsel fees was $3,700. Husband did not dispute that he had failed to pay these counsel fees. Husband did not demonstrate that he lacks the ability to pay. To the contrary, the evidence suggested that Husband has the ability to pay. In particular, this court considered the fact that Husband received sale proceeds from the sale of two pieces of marital property. This court also considered Ms. Riegner's testimony that, in early 2003, Husband filed a petition in the Orphans' Court Division offering to purchase his mother's real estate properties with a value of $344,000. (R. at 103.) Therefore, this court directed Husband to pay the $3,700 in counsel fees that he already owed in addition to the $50,000 in counsel fees awarded to Wife following equitable distribution trial.

For the foregoing reasons, this court's September 13, 2005 order should be affirmed.