J-A26025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JENNIFER L. KLOTZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JEFFREY J. KLOTZ | |
| | No. 247 WDA 2016 |

Appeal from the Order January 19, 2016
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD 13-001133-002

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY RANSOM, J.:　　　　　　　**FILED NOVEMBER 08, 2016**

Jennifer L. Klotz ("Wife") appeals from the January 19, 2016 decree in divorce from Jeffrey J. Klotz ("Husband") and the equitable distribution order incorporated therein.  We affirm.

We adopt the following statement of facts, taken from the trial court opinion and the master's recommendations, which in turn are supported by the record.  **See** Trial Court Opinion (TCO), 4/18/16, at 1-2; Master's Recommendation (MR), 6/18/16, at 1-7.  Husband and Wife married on May 24, 2008, and have one minor child, born November 4, 2012.  The parties separated on July 8, 2013, pursuant to a protection from abuse petition filed by Wife.  On September 6, 2013, Wife filed an eight-count complaint in divorce.

Wife is thirty-one years old and resides with her parents and the parties' minor child. Wife has a bachelor's degree in accounting. Previously, she was employed as a collateral review specialist at PNC and National Link, earning between $32,000.00 and $38,000.00 per year. Currently, she is employed full-time by the Transportation Security Administration as an administrative assistant, earning $39,784.00 per year.

Husband is forty-seven years old and was employed as a police officer in the Moon Township Police Department from November 1998 to July 2013. He earned approximately $90,000.00 per year. In July 2013, Husband was terminated from his employment for cause related to the PFA order. Husband twice appealed his termination to no avail. Currently, Husband is employed as a day laborer in the construction industry, earning approximately $10.00 per hour. He has been unsuccessful in applications for steady employment.

Marital property consisted of the marital residence, a Clearview Federal Credit Union Account,[1] money kept in the home, Husband's JANUS account, Husband's ALGER account, the parties' cars, a motorcycle, Husband's retirement account, Husband's 457(b) savings, Husband's Health Savings

---

[1] The parties stipulated that, prior to the marriage, Husband had a savings account balance of $47,000.94, which he contributed to a Clearview FCU account. During the marriage, Husband added Wife's name to this account. On the date of separation, the Clearview FCU account had a balance containing $169,103.61.

Plan, Wife's engagement ring, Pittsburgh Steeler's season's tickets, life insurance, and burial plots. Marital debt included a mortgage on the marital residence, which was paid off six weeks prior to the date of separation. The parties' stipulations as to value are contained within the master's report.

The master issued a report and recommendation, to which both parties filed exceptions. The trial court entered an order granting Husband's exceptions in part and dismissing Wife's exceptions. The trial court found it manifestly inequitable of the master to ignore Husband's pre-marital contributions to the Clearview FCU account and the parties' payment of Wife's pre-marital debt. Thus, the court set off 75% of the pre-marital value of the account, or $35,250.71, and assigned Wife 75% of the value of the payoff of her student loan, or $26,148.00. The order denied Wife's exception to Husband's earning capacity.

Wife timely appealed the order and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

Herein, Wife raises four issues for our review.

I. The trial court erred in affirming the divorce master's conclusion that Husband's earning capacity is limited to that of a day laborer of $10.00 per hour . . .

II. The trial court erred in sustaining [Husband's] Exception #2, thereby overruling the master's refusal to extend credit to [Husband] for payment of [Wife's] pre-marital student loans . . .

III. The trial court erred in sustaining [Husband's] Exception #3, thereby overruling the master's refusal to extend credit to [Husband] for funds held in his pre-marital credit union account which was converted into a joint account . . .

IV. The trial court mistakenly allocated to [Husband] a combined credit consisting of $35,250.71 for 75% of the funds held in his pre-marital credit union account, and $26,148.00 for 75% of the payoff of Wife's pre-marital student loans . . .

Appellant's Brief at 8 (unnecessary capitalization removed).

Our role in reviewing equitable distribution awards is well-settled.

Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005) (internal quotations and citations omitted). "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those determinations so long as they are supported by the evidence. *Childress v. Bogosian*, 12 A.3d 448, 455–56 (Pa. Super. 2011). Additionally, a master's report and recommendation, though advisory, is to be given the fullest consideration, particularly in regards to the credibility of witnesses, as the master may observe and assess their behavior and demeanor. *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003).

First, Wife claims that the trial court erred in affirming the master's conclusion that Husband's earning capacity was limited to that of a day laborer at $10.00 per hour. She avers this determination is inconsistent with Pa.R.C.P. 1910.6-2(d) and supporting precedent, which states that when a party is fired for cause, there generally will be no effect on the support obligation. Thus, Wife claims Husband should have been assigned an earning capacity consistent with that of a police officer.

It is true that the Pennsylvania Rules of Civil Procedure provide that, when a party is terminated for cause, there generally will be no effect on the support obligation. *See* Pa.R.C.P. 1910.6-2(d)(1). A party may not voluntarily reduce his or her income in an attempt to circumvent his support obligation. *Woskob v. Woskob*, 843 A.2d 1247, 1253-54 (Pa. Super. 2004). However, where a party is fired for cause, the court may consider reducing the obligation where that party establishes he or she attempted to mitigate lost income. *See Grigoruk v. Grigoruk*, 912 A.2d 311, 313 (Pa. Super. 2006). When considering mitigation evidence, the master's credibility determinations must be taken into account. *See Moran*, 839 A.2d at 1095.

We agree that, based upon the reasons for his termination, it is unlikely Husband will be able to find employment as a police officer in another jurisdiction. He has no higher education and had been employed as a police officer for twenty-three years. The master and trial court found

credible Husband's testimony regarding his attempts to mitigate his loss of income and lack of success in doing so. Husband twice appealed his discharge from the police department, worked construction jobs where he could find them, and attempted to seek employment with various companies to no avail. Thus, it was appropriate to reduce his earning potential, and the trial court did not abuse its discretion in this conclusion.

Next, Wife claims that the trial court erred in sustaining Husband's second exception and granting Husband a credit towards the payment of Wife's $34,864.00 pre-marital student loan. The trial court assigned Wife 75% of the value of the debt payoff as, based on the short length of the marriage, it was unfair to ignore the financial benefit to Wife. Wife contends this assignment is contrary to the law and inconsistent with the court's assignment of a 50-50 equitable distribution division of the marital estate.

As noted above, the trial court has broad discretion in fashioning an equitable distribution award, and we will overturn that award only where there is an abuse of discretion. *See McCoy*, 888 A.2d at 908. Pursuant to statute,

> [u]pon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets.

23 Pa.C.S. § 3502. Factors relevant to the equitable division of marital property include: the length of the marriage; the age, health, and employability of the parties; the opportunities of the parties for future acquisitions of income; the sources of income of both parties; and the economic circumstances of each party at the time the division of property becomes effective. *See* 23 Pa.C.S. § 3502. The trial court may divide the award as the equities presented in the particular case may require. *See* ***Anzalone v. Anzalone***, 835 A.2d 773, 785 (Pa. Super. 2003).

Wife's argument that this analysis would cause each party to a marriage to "run a tab" on the other's expenditures is unconvincing. In the instant case, the trial court considered the parties' relatively short marriage of five years and that the payment of the debt inured solely to Wife's benefit; Husband's age, difficulty in finding employment, poor economic circumstances, future prospects, and lack of education; and Wife's age, steady employment, education, and future economic prospects. We see no abuse of discretion in this consideration, nor in its result.

Wife next claims that the trial court erred in sustaining Husband's third exception and crediting Husband 75% of the funds, or $35,250.71, in his pre-marital credit union account, which was later converted to a joint account. Wife argues that the trial court improperly identified a portion of the value of the joint account as a non-marital asset, despite the fact that the parties had comingled the funds.

Marital property consists of all property acquired by either party during the marriage and the increase in value of any non-marital property enumerated by statute. 23 Pa.C.S. § 3501(a). However, "[p]roperty acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage" is non-marital property. **See** 23 Pa.C.S.A. § 3501(a)(1, 3); 23 Pa.C.S.A. § 3501(b). Where a party can trace pre-marital funds even after they have been comingled with marital funds, a court does not necessarily abuse its discretion in finding that the pre-marital funds do not constitute a marital asset. **See generally Lee v. Lee**, 978 A.2d 380, 384-385 (Pa. Super. 2009); **but see Busse v. Busse**, 921 A.2d 1238, 1257 (Pa. Super. 2007); **Verholek v. Verholek**, 741 A.2d 792, 797 (Pa. Super. 1999);

In the instant case, although the FCU account was utilized by both parties as a marital account, both parties stipulated that the pre-marital balance was $47,000.94. There was no question about whether these funds were pre-marital, nor was there any difficulty in tracing or identifying them.

The trial court noted that it evaluated the contribution of each party in the acquisition, preservation, depreciation or appreciation of the marital property, as required by statute. 23 Pa.C.S. § 3502(a)(7). Specifically, it noted that Wife had entered the marriage with no assets and debt of almost $35,000.00. She left the marriage with no debt, one half of the marital value of Husband's retirement plan and savings plan, one-half of the

increase in value of Husband's pre-marital home, one half of Husband's Janus, Alger, Health Savings Plan accounts, and shared custody. Further, the trial court again noted Husband's relatively grim future economic prospects in comparison to Wife's economic prospects, and concluded that it had properly exercised its discretion in setting off 75% of the value of Husband's pre-marital assets contributed to the FCU account. We discern no abuse of discretion in this conclusion.

Finally, Wife argues that the trial court erred in allocating Husband a combined credit of $61,398.71 from the pre-marital credit union account and towards the student debt payoff, as this combined credit exceeds 100% of Husband's original claimed pre-marital credit of $47,000.94. Although Wife's argument is unclear and does not cite to authority, she appears to claim that this award was inequitable and capricious. We have discussed the propriety of the trial court's order above and found no abuse of discretion therein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2016