J-A13039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIA DORGAN (SNYDER) | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RONALD SNYDER, SR., | : | |
| | : | |
| Appellant | : | No. 1115 WDA 2015 |

Appeal from the Decree entered July 17, 2015
in the Court of Common Pleas of Allegheny County,
Family Court, No(s):  FD-11-0007157-016

BEFORE:  OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:        **FILED SEPTEMBER 21, 2016**

Ronald Snyder, Sr. ("Husband"), appeals from the Order equitably distributing the marital assets of Husband and Maria Dorgan (Snyder) ("Wife"), which was made final by the entry of the July 17, 2015 Divorce Decree.[1]  We affirm in part, and reverse and remand in part.

The trial court summarized the relevant history underlying the instant appeal as follows:

> Husband and [Wife] were married on December 18, 1993. They have no children.  Wife filed a Complaint in Divorce on May

---

[1] Husband filed his Notice of Appeal from the June 24, 2015 Order, which equitably distributed the parties' marital assets.  Generally, only final orders are appealable.  **See** Pa.R.A.P. 341(b)(1) (defining a final order as any order that disposes of all claims and of all parties).  However, even though a pre-divorce order of equitable distribution is an interlocutory order, this Court may review the order once "it has been rendered final by the entry of a decree in divorce[.]"  Because a Divorce Decree has been entered, we may review Husband's claims.  **See id.**

31, 2011[,] wherein she raised claims for equitable distribution and counsel fees. Wife filed a Motion for Special Relief on June 22, 2011[,] wherein she alleged that Husband had a history of substance abuse. Wife claimed that because of his history and the pending divorce litigation, Husband might dissipate a large payment he was to receive as a result of his ownership of mineral rights in Ohio ("Ohio Property"). The [trial c]ourt issued an [O]rder prohibiting Husband from dissipating the payment. On July 21, 2011[,] the [trial c]ourt issued an Order granting each party a $15,000 advance from the joint PNC escrow account. Wife was also granted a $15,050 reimbursement from the PNC escrow account for repairs and maintenance to the marital residence. On April 10, 2012[,] the [trial c]ourt entered an Order directing that each party receive one-half (½) of the net proceeds from the sale of the marital residence and requiring the parties to waive any marital interest in residences purchased thereafter by either party. On August 25, 2014[,] Husband presented a Motion for Special Relief[,] wherein he requested the return of jewelry items and [Husband's] coin collection. The [trial c]ourt issued an Order requiring Wife to produce the items to an appraiser and prohibiting her from liquidating the items.

A two (2) day equitable distribution hearing was held on February 4 and 5, 2015[,] before Master Peggy Lynn Ferber ["Master Ferber"]. Master Ferber filed her Report and Recommendation ("Master's Report") on February 12, 2015. Both parties timely filed exceptions and presented oral arguments. An Order of Court was issued on June 24, 2015 granting three (3) of Wife's exceptions and denying all of Husband's exceptions. A Decree in Divorce was issued on July 17, 2015. Husband timely filed a Notice of Appeal of the [trial c]ourt's June 24, 2015 Order of Court.

Trial Court Opinion, 9/17/15, at 1-2.

Husband presents the following claims for our review:

I. Whether the trial court committed an error of law by holding that the parties equally split all future income from the [Ohio] Property[?]

II. Whether the trial court committed an error of law by holding that Earl Snyder ["Snyder"] gifted family heirloom jewelry (*i.e.*[,] the Movado watch, the [black] pearl [necklace] and the

- 2 -

[cocktail] ring) to [Wife,] when the donor testified that those pieces were, in fact, given to [Husband?]

III.   Whether the trial court committed an error of law by awarding each party 50% of the marital estate[,] and no alimony for [Husband,] when such an award is contrary to the statutory factors for equitable distribution and alimony[?]

IV.   Whether the trial court committed an error of law in holding that [Wife] shall be reimbursed $66,814.34 (*i.e.*[,] comprised of alleged post[-]separation bills, discrepancy of Benefits from escrow, payment to Mr. [Edward] Six [("Six"),] … and legal fees)[,] when there was insufficient evidence for such a holding, and/or the [trial c]ourt considered evidence outside of the record for the post[-]separation expenses[?]

V.   Whether the trial court committed an error of law by holding that the Estate account into which [Wife] deposited her inheritance was not part of the marital estate, as a whole or in part, when she comingled marital funds[?]

VI.   Whether the trial court committed an error of law in holding that the marital portion of the Eaton Pension was $92,000[,] when the parties [agreed] that the value was $92,500[?]

Brief for Appellant at 10, 16, 17, 21, 28, 32.[2]

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***McCoy v. McCoy***, 888 A.2d 906, 908 (Pa. Super. 2005).  "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence."

***Id.***

_____

[2] Husband failed to include in his appellate brief a statement of the questions involved, as required by Pa.R.A.P. 2111(a)(4).  Ordinarily, "[n]o question will be considered unless it is stated in the statement of questions involved or is failure suggested thereby."  Pa.R.A.P. 2116(a).  We will, however, overlook this defect and address the issues raised by Husband.

When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Smith v. Smith**, 904 A.2d 15, 18 (Pa. Super. 2006) (citation omitted). In fashioning an equitable distribution award, the trial court must split the property equitably, rather than equally. **Drake v. Drake**, 725 A.2d 717, 721 (Pa. 1999). "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Schenk v. Schenk,** 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted). To do so, the trial court is required to "consider all relevant factors," including the length of the marriage; any prior marriages of either party; the age, health, station, skills, and employability of the parties; the contribution by one party to the education, training, or increased earning power of the other party; the relative opportunities each party has to acquire future assets and income; the relative sources of income for each party; the role each party played in either building or dissipating marital property ("including the contribution of a party as homemaker"); the value of each party's separate property; the standard of living established during the marriage; the economic circumstances of each party at the time the division of property is to become effective; the tax ramifications associated with the distributed assets; the expense to sell, transfer, or liquidate a particular asset; and, whether the

- 4 -

party will be serving as the custodian of a dependent minor child. **See** 23 Pa.C.S.A. § 3502(a)(1)-(11).

Although a master's report and recommendation is only advisory, it "is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master ha[d] the opportunity to observe and assess the behavior and demeanor of the [witnesses]." **Childress v. Bogosian**, 12 A.3d 448, 455 (Pa. Super. 2011) (internal quotations and citations omitted). However, the final responsibility of making the property distribution rests with the trial court. **McNaughton v. McNaughton**, 603 A.2d 646, 648 (Pa. Super. 1992) (internal citations omitted). "Our review is thus based on the [trial] court's distribution of property." **Id.**

Husband first claims that the trial court improperly required the parties to split equally all future income from the Ohio Property. Brief for Appellant at 10. Husband argues that the Master's Report, adopted by the trial court, improperly analyzed the factors set forth at section 3502. **Id.** Husband basically disputes the weight that the Master/trial court assigned to each factor. **Id.** at 10-15. Husband further asserts that the trial court ignored the testimony of Husband and Wife regarding the acquisition of the Ohio Property before the marriage, Husband's "sweat equity" after the marriage and the fact that no marital funds were used for this investment. **Id.** at 15. Thus, Husband contends, he should have received a larger share, if not most

of the parties' interest in the gas and mineral rights "due to his premarital, post-marital and post[-]separation involvement." *Id.*

In its Opinion, the trial court addressed Husband's claim and concluded that it lacks merit. Trial Court Opinion, 9/17/15, at 4-6. The trial court's findings are supported in the record, and we discern no abuse of discretion in this regard. Accordingly, we affirm on the basis of the trial court's Opinion with regard to this claim. *See id.*

Husband next claims that the trial court improperly found that a Movado watch, black pearl necklace and cocktail ring were non-marital property. Brief for Appellant at 16. Husband directs our attention to testimony by Snyder that the three items were heirlooms with significant sentimental value, "and were given to Husband to ensure [that] they stayed in the family." *Id.* at 16-17 (citing N.T., 2/5/15, at 44-45). Wife counters that the Master credited her testimony that Snyder "gave her a pair of pearl earrings, a pearl necklace and a diamond cocktail ring."[3] Brief for Wife at 8.

The Master's Report identified the "whereabouts of several pieces of jewelry and Husband's coin collection" as a disputed issue between the parties. Master's Report, 2/12/15, at 4. Master Ferber stated that "Wife agreed to return the coins and the jewelry to Husband. So this is a non-issue." *Id.* at 4 n.10. Master Ferber further indicated that "[t]he parties discussed some jewelry and Wife agreed to return the requested items to

---

[3] Wife does not mention the Movado watch in her brief.

Husband[,] and she would retain the balance." *Id.* at 9 n.26. According to Master Ferber, Wife was to return the items prior to the second day of the hearing, but the Master did not know if that exchange actually took place. *Id.*

In its Opinion, the trial court relied upon Master Ferber's Report. The trial court stated that at the Master's hearing, the whereabouts of these items was an issue that the parties were unable to resolve. Trial Court Opinion, 9/17/15, at 6. The trial court specifically referred to Master Ferber's statement that Wife had agreed to return these items to Husband, and therefore, the matter is a "non-issue." *Id.* The trial court then found that "[a]ll parties agree that the watch, pearl and ring were gifts from a third party and[,] therefore[,] not part of the marital estate or subject to equitable distribution pursuant to 23 Pa.C.S.A. § 3501(a)(3)." *Id.* at 7. Notwithstanding these statements, the trial court then addressed the disposition of the Movado watch, the cocktail ring and the black pearl necklace as follows:

The Movado Wrist Watch:

On the first day of the hearing[,] Wife agreed to bring in two (2) watches and a coin collection to turn over to Husband on the second day of the hearing. Based on the transcript, the [trial c]ourt infers this to include the Movado watch at issue. Husband failed to raise the issue during his cross-examination of Wife on the second day of trial. **The Master, therefore, presumed that the exchange had taken place and properly omitted them from her Recommendation.**

- 7 -

> The Diamond [Cocktail] Ring and [Black] Pearl [Necklace]:
>
> The parties disagree about whether the [cocktail] ring and pearl were gifted to Husband or Wife. The Master heard Wife's testimony that [] Snyder had gifted the [cocktail] ring and pearl to her. The master also heard [] Snyder's testimony that he had gifted the ring and pearl to husband. **The Master was aware that the [cocktail] ring and pearl were in Wife's possession. Since the Master did not recommend [that] Wife be ordered to give the rings to Husband, the clear implication is that she found Wife's testimony credible.** The [trial c]ourt will not disturb a Master's determination of credibility absent a showing of error.
>
> By making a determination of credibility in the face of conflicting testimony, the Master operated within her discretion. The [M]aster's determination and the [trial c]ourt's acceptance of it are supported by the record….

Trial Court Opinion, 9/17/15, at 7-8 (emphasis added, citations omitted).

Thus, the trial court found that the Movado watch and items of jewelry were not marital property. *See id.* Upon our review of the record, we conclude that the trial court's findings regarding the Movado watch are not supported by the evidence. Although the trial court properly determined that the jewelry was non-marital property, it failed to determine the ownership of the jewelry.

At the Master's hearing, the parties disputed whether the Movado watch was marital property, and disagreed as to whom the black pearl necklace and cocktail ring were given. Wife testified as follows regarding the watch and jewelry:

Q. [Wife's counsel:] Now, are you in possession of some jewelry?

A. Yes.

Q. Can you identify what jewelry you have in your possession?

THE [MASTER]: That's marital. Marital jewelry. Something acquired during the marriage.

A. Oh, [Husband's] watches. My watch.

THE [MASTER]: You were asked about what jewelry you have.

[Wife]: Isn't that—

THE [MASTER]: Are you holding his watches. Do you have his watches?

[WIFE]: Yes.

THE [MASTER]: Oh, you do?

[WIFE]: Yes.

THE [MASTER]: You have his watches in your possession?

[WIFE]: I do.

THE [MASTER]: Okay. I thought—I didn't understand. I thought you were talking about just jewelry that was acquired during the marriage, because I said that, but you're saying you're in possession of it.

[WIFE]: Yes.

**THE [MASTER]: This is the marital jewelry you're in possession of?**

**[WIFE]: Yes.**

Q. [Wife's counsel:] How many watches do you have?

A. [Wife:] Two.

**Q. Do you want to keep them or are you okay [for them] to go on [Husband's] side?**

**A. They can go on [Husband's] side.**

**Q. Were they acquired during the marriage?**

**A. Uh-huh.  Yes, I should have said.  I'm sorry.**

Q.  Do you know what they are worth?

A.  I have no idea.

…

Q.  And what about non-marital jewelry?  There was an issue of some—you have a ring and a [black pearl] necklace?

A.  Yes.  [Snyder] … gave me a pair of pearl earrings,[4] a pearl necklace and a diamond [cocktail] ring.

Q.  And that was given by [Snyder] to you?

A.  Correct.

N.T., 2/4/15, at 73-74 (emphasis and footnote added).  Thus, Wife claimed that the Movado watch was marital property and subject to distribution, and that the ring and necklace were a gift from Snyder to her.

Subsequently, Wife testified that she also had in her possession Husband's coin collection.  N.T., 2/4/15, at 72.  When Wife's counsel indicated that he would object to the value that Husband's appraiser had assigned to the collection, the Master made the following inquiry:

THE [Master]:  Are these items small enough that you can just bring them tomorrow?

[WIFE]:  Yes.

---

[4] The pearl earrings have not been raised as an issue in this appeal.

**THE [MASTER]:  Okay.  Just bring them tomorrow.**

*Id.* at 73 (emphasis added).

Husband presented Snyder's testimony in support of his claim that Snyder had given him the watch, [cocktail] ring and necklace:

Q. [Husband's counsel:]  … [W]hat was your wife's name?

A. [Snyder:]  Everybody called her Betty.

Q.  … And did Betty pass away?

A.  She passed away.

Q.  And when did she pass away?

A.  2004.

**Q.  And in 2004, did—was there—did you ever gift any of her assets to anyone?  Let's ask this.  Did you ever gift any of her jewelry to anyone in your family?**

**A.  Yeah.  I gave a [cocktail] ring and Movado watch and a black pearl.**

Q.  Okay.

A.  Black mounted pearl.

**Q. … And who did you gift that to?**

**A.  Well, initially I gave it to my son, Ron.  And it was a family heirloom.  I gave it to my wife on the 50th wedding anniversary.**

Q.  All of those items you gave to her on your 50th –

A.  All except the black pearl.  I gave [Betty] that when she was dying of cancer.  I took her to Tahiti and I bought her a black pearl and had it mounted.

Q. And why [to Husband]? Why did you want to—because you have other children, correct?

A. Oh, Yeah.

**Q. Why give those things to [Husband]?**

**A. Right. Well, I wanted to keep it in the family in case anything ever happened.**

N.T., 2/5/15, at 44-45 (emphasis added).

Our review of the record discloses that the parties disputed whether the Movado watch was a marital asset.[5] Our review of the record further discloses that the parties agreed that the cocktail ring and black pearl necklace were not marital property, but disputed the ownership of those items. There is no evidence of record that Wife agreed to bring the Movado watch, cocktail ring and black pearl necklace to the second day of the Master's hearing, or that she agreed to give those items to Husband. Rather, Wife agreed to bring Husband's coin collection to the Master's hearing the following day, as the parties contested the appraisal of that collection. *See* N.T., 2/4/15, at 73.

Because the trial court's findings are not supported in the record, it is necessary to reverse the equitable distribution of the parties' marital assets, and remand the matter to the trial court. On remand, the trial court is directed to determine whether the Movado watch is marital property. If the

---

[5] Wife testified that the watch was marital property, but she did not object to the distribution of that asset to Husband; Snyder testified that he gave the watch to Husband. *See* N.T., 2/4/15, at 71-72; N.T., 2/5/15, at 44-45.

watch is marital property, the trial court is directed to equitably distribute that asset.[6]  If the watch is non-marital property, the trial court is directed to determine the ownership of that item.  The trial court is further directed to determine the ownership of the cocktail ring and black pearl necklace, which, the parties agreed, are non-marital assets.

In his third claim of error, Husband argues that the trial court improperly awarded each party 50% of the marital estate, and awarded no alimony to Husband.  Brief for Appellant at 17.  Regarding the equitable distribution factors, Husband relies on the arguments he raised in his first claim.  *Id.*  As we have concluded that Husband's first claim lacks merit, we will not revisit that issue.

Husband argues that the trial court erred in not awarding him alimony. *Id.*  Husband asserts that the June 8, 2012 Mutual Release and Waiver ("Waiver"), signed by him, is invalid as a matter of law.  *Id.* at 18. According to Husband, Wife admitted in her testimony that she gave the Waiver to a third party to present to Husband, while he was in a "rehab facility."  *Id.* at 19 (citing N.T., 2/4/15, at 122).  Husband asserts that Wife committed fraud by having her lawyer draft the Waiver, and then circumventing Husband's counsel by having a third party deliver the Waiver to Husband.  Brief for Appellant at 19.  Husband argues that the Waiver was

---

[6] We reverse the equitable distribution of the parties' marital assets in its entirety, pending a determination of whether the Movado watch is deemed marital property, as such a determination may disrupt the trial court's distribution scheme.

- 13 -

presented to him "when his cognitive capacity to act in his best interest [was] questionable." *Id.* Regarding the trial court's finding of legal waiver, Husband argues that he was unaware of the Waiver document until a settlement conference prior to the hearing. *Id.* at 21.

In its Opinion, the trial court addressed Husband's claim and concluded that it lacks merit. *See* Trial Court Opinion, 9/17/15, at 8-9. We agree with the sound reasoning of the trial court, as expressed in its Opinion, and affirm on this basis with regard to Husband's third claim. *See id.*

In his fourth claim, Husband argues that the trial court erred in finding that Wife should be reimbursed $66,814.34 for certain expenditures and legal fees. Brief for Appellant at 21-22. Husband argues that the evidence is not sufficient to support the trial court's award, and that the "list of expenditures may be duplicative." *Id.* at 22. Specifically, Husband asserts that the list includes items that should not be reimbursed by Husband, since Wife was living in the marital residence. *Id.* Husband further challenges the trial court's determination of the benefit he received from the escrow account, which held the Brush Creek Property lease funds, and the trial court's analysis of a 2011 tax payment. *Id.* at 23-24. Husband disputes Wife's claim that Six was entitled to $130,000 of the gas lease proceeds. *Id.* at 25. Rather, Husband asserts that Six was entitled to $170,000 of the gas lease proceeds, based upon a separate agreement. *Id.* Husband basically disputes the trial court's credibility determination in this regard.

*Id.* Finally, Husband claims that Wife should be charged for the increase tax liability caused by her filing her tax returns separately. *Id.* at 25-26.

In its Opinion, the trial court addressed Husband's challenges to the amount of reimbursement to Wife, and concluded that it lacks merit. *See* Trial Court Opinion, 9/17/15, at 10-15. We agree with the sound reasoning of the trial court, as stated in its Opinion, and affirm on this basis with regard to Husband's fourth claim. *See id.*

In his fifth claim, Husband argues that the trial court improperly determined that the estate account into which Wife deposited her inheritance was not part of the marital estate. Brief for Appellant at 28. Husband argues that because Wife comingled the estate funds with marital funds, the account was a marital asset. *Id.*

The trial court addressed this claim in its Opinion, and concluded that it lacks merit. Trial Court Opinion, 9/17/15, at 16-18. We agree with the reasoning and the result reached by the trial court, in addressing Husband's fifth claim, and affirm on this basis. *See id.*

Finally, Husband argues that the trial court erred in valuing the marital portion of the Eaton Pension at $92,000, when the parties stipulated that the value was $92,500. Brief for Appellant at 32. In its Opinion, the trial court agreed, stating that "the [trial c]ourt's Order should be modified by decreasing the amount Husband shall transfer to Wife by $250. Trial Court Opinion, 9/17/15, at 18. Because we remand for further consideration of

the issues related to the Movado watch, cocktail ring and black pearl necklace, we direct that on remand, the trial court modify its equitable distribution Order to reflect and apply the actual value of the marital portion of the Eaton Pension.

Decree affirmed in part and reversed in part. Case remanded for proceedings in accordance with this Memorandum. Motion to dismiss denied. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2016

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

MARIA DORGAN (SNYDER)

Plaintiff,

v.

RONALD SNYDER, SR.

Defendant.

No: FD 11-007157-016

Superior Court No.: 1115 WDA 2015

**OPINION**

BY:

Honorable Donald R. Walko, Jr.
706 City-County Building
414 Grant Street
Pittsburgh, PA 15219

Copies to:

Counsel for Plaintiff:
Robert J. Fall, Esquire
Raphael, Ramsden & Behers, P.C.
1200 Frick Building
437 Grant Street
Pittsburgh, Pennsylvania 15219

Counsel for Defendant:
Chrystal C. Tinstman, Esquire
Strassburger McKenna Gutnick & Gefsky
Four Gateway Center
Suite 2200
444 Liberty Avenue
Pittsburgh, Pennsylvania 15222



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| MARIA DORGAN (SNYDER), | FAMILY DIVISION |
| Plaintiff, | |
| | Docket No.: FD 11-007157-016 |
| v. | |
| | Superior Court No.: 1115 WDA 2015 |
| RONALD SNYDER, SR., | |
| Defendant. | |

## OPINION

WALKO, J.                                                     September 15, 2015

Defendant Donald Snyder, Sr. ("Husband") appeals this Court's June 24, 2015 Order of Court. With the exception of a minor correction, the Order of Court should be affirmed for the reasons set forth in this Opinion.

### BACKGROUND & PROCEDURAL HISTORY

Husband and Plaintiff Maria Dorgan (Snyder) ("Wife") were married on December 18, 1993. They have no children. Wife filed a Complaint in Divorce on May 31, 2011 wherein she raised claims for equitable distribution and counsel fees. Wife filed a Motion for Special Relief on June 22, 2011 wherein she alleged that Husband had a history of substance abuse. Wife claimed that because of his history and the pending divorce litigation, Husband might dissipate a large payment he was to receive as a result of his ownership of mineral rights in Ohio ("Ohio Property"). The Court issued an order prohibiting Husband from dissipating the payment. On July 21, 2011 the Court issued an Order granting each party a $15,000 advance from the joint

1

PNC escrow account. Wife was also granted a $15,050 reimbursement from the PNC escrow account for repairs and maintenance to the marital residence. On April 10, 2012 the Court entered an Order directing that each party receive one-half (½) of the net proceeds from the sale of the marital residence and requiring the parties to waive any marital interest in residences purchased thereafter by either party. On August 25, 2014 Husband presented a Motion for Special Relief wherein he requested the return of jewelry items and a coin collection. The Court issued an Order requiring Wife to produce the items to an appraiser and prohibiting her from liquidating the items.

A two (2) day equitable distribution hearing was held on February 4 and 5, 2015 before Master Peggy Lynn Ferber. Master Ferber filed her Report and Recommendation ("Master's Report") on February 12, 2015. Both parties timely filed exceptions and presented oral arguments. An Order of Court was issued on June 24, 2015 granting three (3) of Wife's exceptions and denying all of Husband's exceptions. A Decree in Divorce was issued on July 17, 2015. Husband timely filed a Notice of Appeal of the Court's June 24, 2015 Order of Court.

## STANDARD OF REVIEW

The Pennsylvania Superior Court has stated that the applicable standard of review in equitable distribution matters is abuse of discretion:

> [The proper] standard of review in assessing the propriety of a marital distribution is whether the trial-court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. *Busse v. Busse*, 921 A.2d 1248, 1257 (Pa. Super. 2007) (citations omitted).

2

## DISCUSSION

Husband raises the following issues in his Concise Statement of Matters Complained of on Appeal:

1. Whether the trial court committed an error of law in holding that the parties equally split all future income from the Ohio property when Husband alone contributed funds and worked prior to the marriage to secure and develop the investment opportunity and Husband alone worked during the marriage to bring the investment to a profitable result.

2. Whether the trial court committed an error of law in holding that Earl Snyder (Husband's father) gifted family heirloom jewelry (i.e. the Movado watch, the pearl pendant and the cocktail ring) to Wife and failing to order that those pieces be returned to Husband when the donor testified that those pieces were, in fact, given to Husband.

3. Whether the trial court committed an error of law in:
   (a) awarding each party 50% of the marital estate for Husband because such an award is contrary to the statutory factors for equitable distribution; and
   (b) failing to award Husband alimony because it is contrary to the statutory factors for alimony and Wife inappropriately obtained Husband's signature on documents waiving his right to alimony outside his counsel's representation.

4. Whether the trial court committed an error of law in holding that Wife shall be reimbursed $66,814.34 (comprised of alleged post-separation bills, discrepancy of benefit from escrow, payment to Mr. Six and legal fees) when, amongst other points or argument:
   (a) there was insufficient evidence for such a holding and/or the Court considered evidence outside of the record for the post-separation expenses;
   (b) the marital estate was depreciated by Wife's undisputed refusal to file tax returns jointly with Husband contrary to law; and
   (c) Wife has equal liability for the debt owed to Mr. Six.

5. Whether the trial court committed an error of law in holding that:
   (a) the account into which Wife deposited her inheritance was

3

not part of the marital estate, as a whole or in part, when she comingled marital funds (including taking and depositing marital funds and denying Husband access to these funds when Husband was in treatment facilities) to the extent that it was impossible to determine what funds, if any, were non-marital and by considering Wife's Trial Aid when there was a sustained objection as to the information contained therein, contrary to Pennsylvania's Rules of Civil Procedure; and

(b) none of Wife's inheritance account was marital property despite the Master's recommendation to the contrary.

6. Whether the trial court committed an error of law in holding that the value of the marital portion of the Eaton Pension was $92,000 when the parties stipulated that the value was $92,500.

### The Court properly considered the statutory factors before ordering the parties to equally divide the marital estate, including all future income from the Ohio property.
*(Matters 1 and 3(a) Complained of on Appeal)*

Husband argues that Wife should not receive half of the marital estate including future income from the Ohio Property based on consideration of the equitable distribution factors enumerated under 23 Pa. C.S.A. §3502. Husband did not dispute the characterization of the Ohio Property and the income it produced as marital property. Husband argued that he should be awarded a majority of the future income because he alone is responsible for the acquisition of the Ohio Property and the associated lease that will generate the future income.

In the Master's Report, Master Ferber explicitly analyzed the factors enumerated in Section 3502 before making her distribution recommendation:

> The Master is required to consider all of the factors set forth in Section 3501 and 3502 of the PA Divorce code of 1980, as amended, before making any recommendation to the Court. This marriage lasted for just under 18 years. This was Wife's first marriage and Husband's second. No children were born to these parties, but Wife parented Husband's son [Ron, Jr.] from his prior marriage from the time he was 8 years old. Husband is 60 and Wife is 53. Wife is in good health and continues to work full-time. Husband retired from Snyder Bros Automotive in 2013 but

4

continues to be involved in the oil/coal/gas venture and continues to receive his share of rents from the Heckel Road property.

Both parties were educated and employed in their respective professions when they met. Other than a brief period before and after the marriage, Wife worked full time. Husband worked less than full time in several years prior to separation as he was either actively addicted or in rehabilitation programs. Both parties contributed to the accumulation of assets subject to equitable distribution. Both parties have sole and separate property acquired either before the marriage, during the marriage, or by inheritance or gift.

The standard of living was upper-middle-class throughout their marriage. They lived in a nice home, drove late model cars, vacationed annually, ate out, enjoyed the cultural and sports life offered by Pittsburgh, and educated Ron, Jr. through good schools all the way through college. Wife's current economic circumstances are better than Husband's as she continues to work full-time. However, Husband has sufficient income from his rental interest, his IRA (should he choose to draw down) and may/will have either SSDI or Social Security within the foreseeable future. Wife has a sole and separate inheritance from her Mother of $112,319 plus her premarital and post-marital retirement benefits. Husband has a 1/3 interest in the Heckel Road property that will mature in 2019 with a payout to Husband of over $400,000 after taxes and costs of sale, plus his premarital retirement benefits.

Having considered all the factors, as well as the actions of the parties since separation, the Master believes a 50/50 split of the marital property is appropriate. Master's Recommendation at 8-9.

"[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing *Simeone v. Simeone*, 551 A.2d 219, 225 (Pa. Super. 1988)).

The Master heard two (2) days of testimony in this case. In her report, she explicitly stated that she considered the factors enumerated in 23 Pa. C.S.A. §3502. After making credibility determinations, weighing the evidence and considering the equitable distribution

5

factors, the Master determined that it was equitable for Wife to receive one-half of the marital estate. The Court reviewed the Master's Report and the evidence presented at the hearing and agreed with her recommendation of a 50/50 marital estate distribution.

The evidence in the record supports the Court's conclusion. The Court's Order awarding Wife one-half of the marital estate including the future earnings from the Ohio property must stand.

**The Court properly refused to order Wife to produce non-marital items of jewelry.**
*(Matter 2 Complained of on Appeal)*

Husband argues that the Court made an error of law by finding that a pearl pendant and cocktail ring were gifted to Wife by Earl Snyder (Husband's Father) and therefore not a part of the marital estate. In his Concise Statement of Matters Complained of on Appeal, Husband argues that the Master should have ordered Wife to deliver a Movado watch, a pearl pendant and a cocktail ring to Husband.

At the hearing, Husband argued that the pearl and cocktail ring were a gift from Earl Snyder to Husband. Tr. Feb.4 at 309. Wife testified that Earl Snyder gave her "a pair of pearl earrings, a pearl necklace, and a diamond cocktail ring." *Id.* at 73. Earl Snyder testified that he "initially" gave "a dinner ring and a Movado watch and a black pearl" to Husband. Tr. Feb.5 at 44. Husband's Exhibit B, referred to often throughout the testimony, lists items in Wife's possession. The list includes one (1) gold Movado wrist watch, one (1) oval diamond dinner ring, one (1) mounted black pearl and assorted coins.

"The whereabouts of several pieces of jewelry and Husband's coin collection" were listed in the Master's Report as an issue that the parties were unable to resolve prior to the hearing. Master's Report at 4. The Master noted in her Report that "Wife agreed to return the coins and

6

the jewelry to Husband. So this is a non-issue." *Id.* at Fn.10. The Master stated that "[t]he parties discussed some jewelry and Wife agreed to return the requested items to husband and she would retain the balance. This was to occur the morning of the second day of the hearing, but the Master does not know if that exchange actually took place." *Id* at 9-10, Fn. 26. The Master did not include any jewelry in her listing of marital property subject to equitable distribution. Master's Report at 9. All parties agree that the watch, pearl and ring were gifts from a third party and therefore not part of the marital estate or subject to equitable distribution pursuant to 23 Pa. C.S.A. §3501(a)(3).

The Movado Wrist Watch:

On the first day of the hearing Wife agreed to bring in two (2) watches and a coin collection to turn over to Husband on the second day of the hearing. Tr. Feb.4 at 71-73. Based on the transcript, the Court infers this to include the Movado watch at issue. Husband failed to raise the issue during his recross-examination of Wife on the second day of trial. *See* Tr. Feb.5 at 67-71. The Master, therefore, presumed that the exchange had taken place and properly omitted them from her Recommendation.

The Diamond Dinner Ring and Pearl:

The parties disagree about whether the dinner ring and pearl were gifted to Husband or Wife. The Master heard Wife's testimony that Earl Snyder had gifted the dinner ring and pearl to her. Tr. Feb.4 at 73. The Master also heard Earl Snyder's testimony that he had gifted the ring and pearl to Husband. Tr. Feb.5 at 44. The Master was aware that the dinner ring and pearl were in Wife's possession. *See* Ex. B, Tr. Feb.4 at 73-74, 309. Since the Master did not recommend Wife be ordered to give the rings to Husband, the clear implication is that she found Wife's testimony credible. The Court will not disturb a Master's determination of credibility absent a

7

showing of error. *See Moran*, 839 A.2d at 1095.

By making a determination of credibility in the face of conflicting testimony, the Master operated within her discretion. The Master's determination and the Court's acceptance of it are supported by the record. The Court's Order must stand.

## The Court properly denied Husband's alimony claim.
*(Matter 3(b) Complained of on Appeal)*

Husband argues that Wife inappropriately obtained his signature on a settlement document purporting to waive spousal support, alimony *pendente lite* and alimony. Husband further argues that the denial of alimony was improper because it was contrary to the statutory factors for awarding or denying alimony.

The Pennsylvania Superior Court has stated that "[t]he determination of marital property rights through prenuptial, post-nuptial and settlement agreements has long been permitted, and even encouraged." *Laudig v. Laudig,* 425 Pa.Super. 228, 624 A.2d 651, 653 (1993).

In support of his argument for the invalidation of the settlement document Husband noted that spouses should be bound by the terms of their agreements absent fraud, misrepresentation or duress. *McMahon v. McMahon*, 612 A.2d 1360, 1363 (Pa.Super. 1992) (citations omitted); *Frank v. Frank*, 587 A.2d 340 (Pa.Super. 1991). Husband argued that Wife fraudulently obtained his signature by failing to properly advise him of his rights and by having a third party present the document for Husband's signature. Husband cites no authority to support his statement that a failure to advise him of his rights constitutes fraud. Husband cites no authority for his assertion that the presentation of a document for signature by a third party constitutes fraud. The Court notes that prior to the hearing Husband did not raise an objection to the settlement document or request a fact-finding hearing to determine its validity.

8

The Master discussed alimony in her Report as follows:

> On or about June 8, 2012, a Mutual Release and Waiver was executed by the parties in which both waived and relinquished their respective rights to spousal support, alimony *pendente lite* and post-divorce alimony. Husband testified that he does not remember signing this document but admits it is his signature. Both parties had just received the distribution of their share of the net proceeds from the April 2012 sale of their marital residence. Both were in the process of buying new homes in the own names. As the divorce and equitable distribution was still pending, banks were apprehensive about making loans based on the uncertainty of what the Courts would do. Both parties benefitted from this Release and Waiver. See Exhibit 8. There has never been an alimony *pendente lite* Order as both parties were and are fully capable of supporting themselves through employment, retirement benefits, rental income, etc. Master's Report at 11.

Wife testified that she gave the settlement document to Dr. Steven Neeley, a friend of the parties, to take to Husband. Tr. Feb.4 at 122. Dr. Neeley identified his signature on the document as a witness to Husband signing the document. Tr. Feb.5 at 12-13, 19-21. Husband testified that he had never seen the settlement document before trial. Tr. Feb.4 at 256. Husband identified his signature on the document. *Id.* at 257. Husband did not testify that Wife induced his signature on the settlement agreement by misrepresentation.

There is nothing in the record to support an argument that Husband's signature on the settlement document was obtained by fraud, misrepresentation or duress. Pursuant to *McMahon*, the Court will not release the parties from the terms of their agreement absent a finding of fraud, misrepresentation or duress. *McMahon*, 612 A.2d at 1363. Since the parties voluntarily waived spousal support, alimony and alimony *pendente lite*, it was unnecessary for the Court to examine the statutory factors for determining the appropriateness of alimony. The Court's order denying alimony for both parties must stand.

9

**The evidence in the record supports the Court's ruling that Husband owes Wife $66,814.34 in reimbursed expenses including reimbursement for Husband's unauthorized payment of $40,000 to Mr. Six.**

*(Matters 4(a) and (c) Complained of on Appeal)*

Husband argues that the Court's holding that Husband owed Wife reimbursement for post-separation expenses was based on insufficient evidence and evidence outside of the record. The Court found that Husband owed Wife $66,814.34. The Court's calculation was as follows:

| | |
|---|---|
| $6,248.34 | Post-separation bills paid on behalf of Husband; |
| $38,735.50 | Discrepancy in escrow benefit; |
| $20,000.00 | Unauthorized payment to Mr. Six; and |
| $1,830.50 | Counsel fees. |

The Court will address each of these items separately.

Post-Separation Bills Paid on Behalf of Husband ($6,248.34):

In her Report, the Master stated:

> Wife testified that she received no money from Husband after May 31, 2011 when the divorce complaint was filed. Wife covered her own expenses, the house expenses and various expenses that were for Husband's benefit. The Master has reviewed this schedule [Exhibit 7] in great detail and has adjusted the request to reflect only those items that were of singular benefit to Husband. Husband owes Wife $6,248.34. Master's Report at 5-6.

Wife testified that Exhibit 7 listed expenses she paid on behalf of Husband and expenses she paid that were necessary to maintain and sell the marital residence. Tr. Feb.4 at 29-32. The marital residence sold on April 23, 2012 and the parties equally split the proceeds. *Id* at 29. The expenses listed in Exhibit 7 were paid after the date of separation, but Husband benefitted from the expenses because he would have received less money from the sale had Wife not spent the money to maintain the property.

10

The Master found Wife's testimony regarding the expenses catalogued in Exhibit 7 credible. Wife was granted reimbursement only for expenditures that benefitted Husband. The record supports the Court's Order.

Discrepancy in Escrow Benefit ($38,735.50):

The Court also ordered Husband to reimburse Wife for the $38,735.50 discrepancy of benefit taken from the parties' joint escrow account. The parties received several distributions from the escrow account during the pendency of the action. The parties stipulated that a schedule included in Wife's Pretrial Statement was a correct summary of the distributions. Master's Report at 7; Tr. Feb.4 at 89-90. That schedule shows that the parties received equal advances of $49,834 from the joint escrow account. *Id.* Those advances are not in dispute.

The discrepancy in benefits from the escrow account revolves around the payment of the parties' 2011 taxes. Husband and Wife paid a total of $178,000 in estimated taxes to the I.R.S. and the Pennsylvania Department of Revenue. Master's Report Attachment. At the time of the payment, the parties agreed that one-half (½) of the payment would go toward each of their separately-filed tax returns. Tr. Feb.4 at 82-85. Despite their agreement Husband claimed the entire $178,000 on his federal and state tax returns. *Id.* Husband's tax refund, which he retained, resulted at least in part from his claiming of the entire amount of estimated taxes paid by Wife and him. Husband's total benefit from the joint escrow account, therefore, was $178,000.

Wife was unable to claim one-half (½) of the $178,000 as the parties had agreed because the entire $178,000 had already been credited toward Husband's taxes. *Id.* Wife's tax obligations were paid out of the joint escrow account for a total of $100,529.[1] Tr. Feb.4 at 80-90. Husband

---

[1] The Court notes that the Master's statement that Wife received $100,529 was an error as Wife actually received $100,599. Neither party raised the mistake at exceptions. The error resulted in Husband being ordered to pay Wife an extra $35. In an estate worth over one (1) million dollars, the Court finds this mistake to be *di minimis*.

11

received the benefit of $77,471 more than Wife. Wife is entitled to half that amount, or $38,735.50.

The record supports the Court's ruling that Husband owes Wife $38,735.50 for the discrepancy in benefit received from the parties' joint escrow account.

Unauthorized Payment to Mr. Six ($40,000):

The Court held that Wife was entitled to reimbursement of her portion of a $40,000 payment made from the parties' escrow account to Mr. Ralph Edwin Six. Mr. Six participated in the Ohio Property business with Husband and Dr. Neely. Mr. Six received a check for $170,000 from the parties' escrow account. Tr. Feb.4 at 78-79. The parties stipulated that Mr. Six was owed $130,000 under their agreement. *Id.* at 78. Husband paid the additional $40,000 from the parties' escrow account and argued that Wife was equally responsible for the payment.

Husband testified that he and Dr. Neeley agreed to pay Mr. Six the additional $40,000 (for a total payment of $170,000) "because of his 11 years in the company… [Mr. Six] is worth 40,000 of his goodwill, so that's where I came up with the 170." Tr. Feb.4 at 290-91. Dr. Neeley testified that he did not agree to pay Mr. Six an additional $40,000 beyond the $130,000 he was owed. Tr. Feb.5 at 9-10, 16. No evidence was presented to show that Wife agreed to the use of the parties' money to pay Mr. Six the additional $40,000. In her Recommendation, the Master noted that "Husband also paid Mr. [Six] an additional $40,000 which Wife did not approve and which Dr. Neely says he never approved. That $40,000 was appropriately Husband's obligation." Master's Report at 8, Fn. 25. No evidence was offered to support Husband's contention that Wife should be responsible for paying one-half (½) of the additional $40,000 that he unilaterally decided to give to Mr. Six. The record supports the Court's determination.

12

Counsel Fees ($1,830.50):

Husband objects to the Court awarding Wife $1,830.50 in counsel fees. Concerning an award of counsel fees the Pennsylvania Superior Court has held that "[t]he trail court has great latitude and discretion with respect to an award of [counsel] fees pursuant to a statute. In reviewing a trial court's award of [counsel] fees, our standard is abuse of discretion. If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision." *Holler v. Smith*, 928 A.2d 330, 332 (Pa. Super. 2007) (quoting *Scalia v. Erie Insurance Exchange*, 878 A.2d 114, 116 (Pa. Super. 2005)).

The counsel fees awarded to Wife are based upon two (2) actions. First, Husband withdrew $14,334 from the parties' joint escrow account on December 31, 2011. Master's Report Attachment. Husband was not authorized to make such a withdrawal and the bank was unable to explain to Wife why Husband was able to remove the money. Tr. Feb.4 at 81. After Wife discovered Husband's withdrawal she contacted her counsel who consulted with opposing counsel to resolve the issue, resulting in counsel fees. *Id.*

Second, $178,000 was withdrawn from the parties' joint escrow account for payment toward their 2011 taxes as discussed *supra*. Wife was assessed with sanctions by the I.R.S. and the Commonwealth of Pennsylvania as a result of her attempt to claim one-half (½) of the parties' $178,000 payment. Wife's counsel performed legal work to help resolve the situation, resulting in counsel fees. Ex. 13.

In her Recommendation, the Master stated that "Wife has requested counsel fees based on two actions by Husband that increased her fees by $1,830.50. The Master finds Wife's request for these counsel fees to be appropriate and reasonable." Master's Report at 10. The Court

13

agreed. But for Husband's unauthorized actions taken in bad faith Wife would not have owed her counsel the $1,830.50. The record supports the Court's award of counsel fees.

Sufficient evidence was presented on the record and considered by the Court before ordering Husband to reimburse Wife $66,814.34 for post-separation expenses, payment to Mr. Six and counsel fees. The Court's order must stand.

**The Court properly refused to find that Wife's refusal to file a joint tax return resulted in the dissipation of marital property.**
*(Matter 4(b) Complained of on Appeal)*

The parties paid their 2011 taxes from the joint escrow account. Tr. Feb.4 at 81, 85. Husband argues that Wife's refusal to file a joint tax return in 2011 resulted in the parties paying more in taxes, thereby depreciating the marital estate.

Federal law states that spouses may file a joint tax return. It does not require spouses to file a joint tax return. 26 U.S.C.A. §6013 (2015). Husband cites *Gruver v. Gruver*, 539 A.2d 395 (Pa.Super. 1988) in support of his argument. In *Gruver*, the Pennsylvania Superior Court held that the lower court did not abuse its discretion by finding that the appellant dissipated marital assets by failing to file joint income tax with the appellee. *Id.* at 398. The appellant in *Gruver* refused to file joint income tax returns because he claimed to have paid all of the parties' owed income tax and the tax preparer's fee for the preceding year. No allegations of fraud or misuse of marital funds were mentioned in the *Gruver* opinion.

The Court finds that *Gruver* is distinguishable from the case *sub judice*. Wife testified that Husband was addicted to illegal drugs in late 2010. Tr. Feb.4 at 14. Wife testified that during his addiction Husband stopped paying the parties' bills and withdrew money from the parties' joint account. *Id.* at 14, 27. Wife further testified that in May 2011 she discovered that Husband had forged her signature on documents related to the Ohio Property. *Id* at 15. On December 31,

14

2011 Husband withdrew over $14,000 from the parties' joint escrow account without authorization as discussed *supra*. *Id.* at 81. The record shows that Husband had a history of fraud and irresponsibility regarding the parties' finances. Additionally, Husband received income from Snyder Bros. Automotive (Husband's family-owned business) in 2011 and Wife was unfamiliar with those transactions. Tr. Feb.5 at 66-67.

Wife testified that she refused to file a joint tax return with Husband in 2011 because she did not know what his liability may be due to fraud and unknown variables with Snyder Bros. Automotive. *Id.* at 66. Unlike in *Gruber,* Husband had committed fraud and mishandled the parties' money immediately prior to the preparation of the tax returns. Wife did not want to expose herself to any liability that Husband may have incurred without her knowledge during his addiction. *Id.* The Master and the Court found Wife's refusal to be made in good faith.

The record supports the Court's determination that Wife did not dissipate the marital estate by refusing to file a joint tax return with Husband. The Court's Order must stand.

**The Court properly found that Wife's inheritance account was non-marital property.**
*(Matter 5(a)&(b) Complained of on Appeal)*

Husband argues that the Court improperly relied on Wife's Trial Aid 1, which summarized bank statements from Wife's inheritance account, despite a sustained objection to its introduction. Husband further argues that Wife's inheritance account should be marital property because it was so comingled with marital funds that it was impossible to trace the funds back to a non-marital source.

Trial Aid 1:

The Master used Trial Aid 1 in her analysis of the inheritance account. Master's Report at 6-7. Trial Aid 1 is the only trial aid referenced by the Master in her Report. Trial Aid 1 is a

summary of transactions to and from Wife's account number 3503 ("the inheritance account") that she opened in 2008 to hold an inheritance from her late mother. Tr. Feb.4 at 41, Ex. 9. The transactions summarized in the trial aid are documented by bank statements contained in Exhibit 9.

Trial Aid 1 summarizes transfers to and from the inheritance account into other specific accounts. Husband objected to the introduction of Trial Aid 1 because Wife did not produce statements for the other accounts. Tr. Feb.4 at 55. Husband agreed that the documents in Exhibit 9 had been properly produced. *Id.* at 58. The Master ruled Trial Aid 1 and Exhibit 9 admissible because they showed the account numbers associated with each deposit and transfer, thereby allowing the Court to trace the transfers of funds. *Id.* at 59. Husband also argued that it was impossible to determine how the money transferred from the inheritance account was ultimately spent without statements from the cross-referenced accounts. *Id.* at 56-58. The Master agreed and ruled that Wife was not permitted to testify about how she had spent the money transferred from the inheritance account.[2] *Id.* at 59.

The Court reviewed Trial Aid 1 and Exhibit 9 during its evaluation of Husband's exceptions. The account statements in Exhibit 9 provide all of the information summarized in Trial Aid 1. It is not disputed that the documents in Exhibit 9 were timely produced to Husband. Tr. Feb.4 at 58. The admission of Trial Aid 1 and Exhibit 9 was therefore proper.

Comingling of Funds in the Inheritance Account:

Husband argues that the account containing Wife's inheritance was so comingled with

---

[2] During the argument regarding Trial Aid 1 the Master stated that she would not consider the information on Trial Aid 1 dated after December 1, 2011 because Exhibit 9 did not have documentation for transactions after December 1, 2011. Tr. Feb.4 at 58. This statement was in error. Exhibit 9 includes documentation through December 27, 2011. The Master's use of December 27, 2011 in her Recommendation as an end date for calculating transfers into and out of the inheritance account, therefore, was proper.

16

marital funds that it was impossible to trace the funds back to a non-marital source. The Pennsylvania Superior Court has held that comingling of separate and marital property does not automatically transform the separate funds into marital property, provided that the party can clearly trace the source of the marital and non-marital funds. *Winters v. Winters*, 512 A.2d 1211, 1215 (Pa.Super. 1986).

Husband was suffering from a drug addiction before the date of separation. Tr. Feb.4 at 248-54. During his addiction Husband used marital funds to purchase street drugs. Tr. Feb.4 at 249. Wife testified that while Husband was addicted in 2010 and 2011, money "start[ed] to disappear out of the [parties' joint] account. There [were] overdrafts. As the drug use started to escalate and I had to protect the assets that we had." Tr. Feb.4 at 27. Wife took over the parties' finances and opened an account solely in her name to keep Husband from taking the parties' money. *Id.* at 29, 109-12.

As discussed above, Exhibit 9 and Trial Aid 1 showed transfers between the inheritance account, Wife's separate account and the parties' joint accounts. The Court agreed with the Master that Exhibit 9 and Trial Aid 1 enabled the Court to trace the marital and non-marital sources of the funds in the inheritance account. The Master found that the net balance of Wife's inheritance account as of the date the Complaint was filed was $112,319.70. Master's Report at 7. The parties had a combined gross income of over $180,000 each year from 2009 through 2011. Master's Report at 7. Wife did not pay expenses from her inheritance account because the parties' income was insufficient. Wife, rather, made the transfers of marital funds between the inheritance account and the parties' joint account solely to keep Husband from dissipating marital funds.

The documentation provided enabled the Court to trace the source of the funds in the

inheritance account. The transfers between the accounts were made necessary by Husband's actions. It would be inequitable, therefore, to characterize Wife's inheritance account as marital property.

Husband states in a footnote to issue number five (5) in his Concise Statement of Issues Complained of on Appeal that "[t]he Master recommended that a portion of [Wife]'s 'inheritance account' be included in the marital estate... However, these funds were not added to the marital estate when the Court described and analyzed equitable distribution." The Court disagrees and does not read the Master's Recommendation to include any of the inheritance account in the marital estate. In her consideration of the factors in 23 Pa.C.S.A. §§3501 and 3502 the Master notes that "Wife has a sole and separate inheritance from her mother of $112,319." The Master does not include any part of the inheritance account in her list of marital assets subject to distribution or her recommended distribution of marital assets. Master's Recommendation at 9-10. The Master did not recommend that any part of Wife's inheritance account be included in the marital estate and the Court agreed. Husband's argument on this point cannot be sustained.

### The marital portion of the Eaton pension should be $92,500.
*(Matter 6 Complained of on Appeal)*

The Master listed the marital portion of Wife's Eaton pension at $92,000 in her recommended distribution and the Court used the same value in its Order dated June 24, 2015. The parties stipulated that the marital portion of Wife's Eaton pension was $92,500. Tr. Feb.5 at 6. Accordingly, the Court's Order should be modified by decreasing the amount Husband shall transfer to Wife by $250.

### CONCLUSION

The Court fully considered the case record on the issues raised before it. The case record

supports the Court's rulings. With the exception of the minor error described in Matter 6, this Court's June 24, 2015 Order of Court should be affirmed.

BY THE COURT:

_____, J.
Donald R. Walko, Jr., Judge

19